02-10-203-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00203-CR

 

 


 
 
 Eligah Darnell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Eligah
Darnell brings thirty-seven points[2] challenging his
conviction for failure to comply with the sex offender registration
requirements by failing to notify the Fort Worth police department at least
seven days before moving to a new address.  See Tex. Code Crim. Proc.
Ann. arts. 62.051(a) (West Supp. 2011), .102(a) (West 2006).  We affirm.

Speedy Trial

          In
his first point, appellant contends that his speedy trial rights under the
United States and Texas Constitutions were violated.

The
Sixth Amendment to the United States Constitution and article 1, section 10 of
the Texas Constitution guarantee an accused the right to a speedy trial.  U.S.
Const. amend. VI; Tex. Const. art. I, § 10; Murphy v. State, 280 S.W.3d
445, 450 (Tex. App.––Fort Worth 2009, pet. ref’d).  Texas courts use the same
test to analyze claims of a denial of this right under the federal and state constitutions. 
Murphy, 280 S.W.3d at 450.  Thus, we analyze speedy trial claims on an
ad hoc basis by weighing and then balancing the four Barker v. Wingo
factors:  1) length of the delay, 2) reason for the delay, 3) assertion of the
right, and 4) prejudice to the accused.  407 U.S. 514, 530, 92 S. Ct. 2182,
2192 (1972); State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999);
Murphy, 280 S.W.3d at 450.  While the State has the burden of justifying
the length of delay, the defendant has the burden of proving the assertion of
the right and showing prejudice.  Barker, 407 U.S. at 531, 92 S. Ct. at
2192; Murphy, 280 S.W.3d at 450.  The defendant’s burden of proof on the
latter two factors varies inversely with the State’s degree of culpability for
the delay.  Doggett v. United States, 505 U.S. 647, 657, 112 S. Ct.
2686, 2693 (1992); Murphy, 280 S.W.3d at 450.  Thus, the greater the
State’s bad faith or official negligence and the longer its actions delay a
trial, the less a defendant must show actual prejudice or prove diligence in
asserting his right to a speedy trial.  Cantu v. State, 253 S.W.3d 273,
280–81 (Tex. Crim. App. 2008); Murphy, 280 S.W.3d at 450–51.

The Barker
test is triggered by a delay that is unreasonable enough to be “presumptively
prejudicial.”  Doggett, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1;
Murphy, 280 S.W.3d at 451.  There is no set time element that triggers
the analysis, but the court of criminal appeals has held that a delay of four
months is not sufficient while a seventeen-month delay is.  Phillips v.
State, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983); Pete v. State,
501 S.W.2d 683, 687 (Tex. Crim. App. 1973), cert. denied, 415 U.S. 959
(1974); Murphy, 280 S.W.3d at 451.  Once the Barker test is
triggered, courts must analyze the speedy trial claim by first weighing the
strength of each of the Barker factors and then balancing their relative
weights in light of the conduct of both the prosecution and the defendant.  Barker,
407 U.S. at 530, 92 S. Ct. at 2192; Murphy, 280 S.W.3d at 451.  No one
factor is either a necessary or sufficient condition to the finding of a
deprivation of the speedy trial right; instead, the four factors are related
and must be considered together along with any other relevant circumstances.  Barker,
407 U.S. at 530, 92 S. Ct. at 2192; Murphy, 280 S.W.3d at 451.  Thus,
courts must apply the Barker balancing test with common sense and
sensitivity to ensure that charges are dismissed only when the evidence shows
that a defendant’s actual and asserted interest in a speedy trial has been
infringed.  Murphy, 280 S.W.3d at 451; see Barker, 407 U.S. at
534–35, 92 S. Ct. at 2192.

In
September 2006, appellant was indicted in the 213th District Court in cause
number 1037163D for failing to notify the Fort Worth police department within
seven days after moving.  After appellant appealed the denial of a pretrial motion
to dismiss to this court,[3] the State reindicted him
in the 432nd District Court in cause number 1177732R on October 26, 2009.  Appellant
filed a speedy trial motion in cause number 1177732R on November 10, 2009.[4] 
The State reindicted appellant a second time in cause number 1197286R on April 22,
2010.[5]  In a hearing on
appellant’s pretrial motions in that cause number, he testified that he was
arrested on September 14, 2006 and detained until October 4, 2006, when he was
released on bond.  He was rearrested on June 29, 2007 and incarcerated for
another eleven months with a hold on his bond.[6]  According to appellant,
he was prejudiced because a key witness––whom he admitted on cross-examination
was Pete Gilfeather––had passed away in 2009.  But appellant also admitted on
cross that Gilfeather did not have any information as to whether appellant had
been living at a certain place in 2006 or whether he had fulfilled his reporting
requirements with the Fort Worth police department.  Appellant mentioned
something about Gilfeather’s having previously presided over a misdemeanor
unlawful carrying of a weapon case that was erroneously enhanced to a felony,
but he never clearly explained why Gilfeather’s testimony was necessary to his
defense.[7]

The
case against appellant had been pending for a little over a year when he filed
his first motion for speedy trial and over three years when he filed his second
motion.  Although the State did not articulate a reason for the delay, at least
part of the delay––from June 2008 to October 2009––is attributable to appellant’s
appeal of the trial court’s denial of his motion to dismiss.  In addition, the
record shows that two of appellant’s appointed lawyers filed motions to
withdraw on the grounds that appellant’s actions had rendered representation
“unreasonably difficult.”  One of the lawyers said that appellant had requested
that he file inappropriate pretrial writ applications and threatened him with
the filing of a grievance if he refused to file those writ applications.  By
the date of trial, appellant was represented by his third appointed counsel[8]
and had represented himself pro se for a time.  Even while represented by
counsel, appellant continued to file numerous pro se motions.

As
prejudice, appellant cited Gilfeather’s death while this case was pending.  But
appellant failed to articulate why Gilfeather was important to the pending
case.  The State introduced evidence at punishment showing that appellant’s
probation for the unlawful carrying of a weapon at a school conviction was
revoked in 1989.  Gilfeather was not the trial judge or appellant’s counsel for
the revocation.  Moreover, the unlawful carrying of a weapon offense was
mentioned by the State only in passing during closing and in conjunction with
several other prior offenses, including the indecency with a child conviction
for which appellant was subject to registration.

Appellant
has presented no evidence of prejudice as a result of the delay, other than the
delay itself, a large part of which was attributable to appellant’s own actions.[9] 
Thus, while some of the Barker factors, such as the length of delay, may
weigh in appellant’s favor, we cannot conclude that the evidence shows that his
rights to a speedy trial were violated such that he is entitled to relief.[10] 
We overrule his first point.

Motion
to Quash

In his
second and third points, appellant claims that the trial court erred by denying
his motion to quash and “Collateral Estoppel Writ of Habeas Corpus.”  Although
the motions are not exactly the same as the motion that was at issue in this
court’s prior opinion in Ex parte Darnell, No. 02-08-00229-CR, 2009 WL
976021, at *1 (Tex. App.––Fort Worth Apr. 9, 2009, pet. ref’d) (mem. op., not
designated for publication), both motions raise the same arguments that this
court has already considered and rejected:  that the prosecution against
appellant is barred because (a) the issue of whether his indecency with a child
conviction is a “sexually violent offense” has already been litigated,[11]
(b) subjecting him to the registration and reporting requirements constitutes impermissible
ex post facto punishment, and (c) according to appellant, he did report when he
was supposed to.  See id.  For the reasons set forth in our prior
opinion and because appellant is not entitled to a pretrial evidentiary hearing
on the merits of the charge pending against him, we conclude and hold that the
trial court did not abuse its discretion by refusing to quash the indictment
and dismiss the case.  Id.; see State v. Rosenbaum, 910 S.W.2d 934, 948
(Tex. Crim. App. 1994) (op. on reh’g).  We therefore overrule appellant’s
second and third points.

Quashing
of Appellant’s Subpoenas

Appellant
claims in his fourth and fifth points that the trial court erred by quashing
subpoenas for Timmie White, who had represented appellant in his prior indecency
with a child conviction and an unlawful carrying of a weapon conviction, and
Stuart Jenkins, a parole officer from the Texas Department of Criminal Justice.

Criminal
defendants have a right to compulsory process for obtaining witnesses.  U.S. Const.
amend. VI; Tex. Const. art. I, § 10; Emenhiser v. State, 196 S.W.3d 915,
921 (Tex. App.––Fort Worth 2006, pet. ref’d).  But the right to compulsory
process is not absolute; defendants have the right to secure only the
attendance of witnesses whose testimony would be both material and favorable to
the defense.  Emenhiser, 196 S.W.3d at 921; see Coleman v. State,
966 S.W.2d 525, 527–28 (Tex. Crim. App. 1998).  To exercise this right, the
defendant must make a plausible showing to the trial court, by sworn evidence
or agreed facts, that the witness’s testimony would be both material and
favorable to the defense.  Coleman, 966 S.W.2d at 528; Emenhiser,
196 S.W.3d at 921.  The mere belief that a witness would support the defense’s
case is insufficient to establish materiality.  Emenhiser, 196 S.W.3d at
921.  Moreover, the right to compulsory process is dependent upon an accused’s
initiative, and the nature of the right requires that its effective use be
preceded by “deliberate planning and affirmative conduct” by the defendant.  Id.

We
review a complaint that the trial court improperly quashed a subpoena for an
abuse of discretion.  Drew v. State, 743 S.W.2d 207, 225 n.11 (Tex. Crim.
App. 1987); Emenhiser, 196 S.W.3d at 921.  Likewise, questions regarding
limitations on the right to compulsory process are within the trial court’s
discretion.  Emenhiser, 196 S.W.3d at 921.

Appellant
wanted to call White and Jenkins to testify about his theory that a prior trial
court had found that his indecency conviction was not classified as a sexually
violent offense under the mandatory supervision statute so that he could not be
charged with the failure to report offense.  See Tex. Code Crim. Proc.
Ann. art. 62.001(6)(A) (West Supp. 2011).  However, because this court has
already rejected these arguments in its opinion on appellant’s pretrial
application for writ of habeas corpus, we conclude and hold that the trial
court did not abuse its discretion by quashing the subpoenas because appellant
did not show that White’s and Jenkins’s testimony was material and favorable to
him.  See Ex parte Darnell, 2009 WL 976021, at *1.  Thus, we overrule
appellant’s fourth and fifth points.

Motion
for New Trial

In his sixth point, appellant argues that the
trial court erred by denying him a hearing on his motion for new trial.  Although
appellant raised the issues of ineffective assistance and the need for new
evidence to prove his innocence,[12] he did not support his
motion with an affidavit or unsworn declaration verifying the matters he
contends are not determinable from the record.  Thus, the trial court did not
abuse its discretion by refusing to hold a hearing on appellant’s motion for
new trial.  See Smith v. State, 286 S.W.3d 333, 339 (Tex. Crim. App.
2009) (“Thus we require, as a prerequisite to a hearing when the grounds in the
motion are based on matters not already in the record, that the motion be
supported by an affidavit, either of the defendant or someone else,
specifically setting out the factual basis for the claim.”); Bahm v. State,
219 S.W.3d 391, 393–94 (Tex. Crim. App. 2007).  We overrule appellant’s sixth
point.

Sufficiency
of the Evidence

In
his eighth and thirty-sixth points, appellant contends that the evidence is
insufficient to support his conviction and that he is actually innocent of the
indecency with a child conviction for which he was required to report.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We
have already determined that appellant’s prior indecency conviction was
reportable.  Ex parte Darnell, 2009 WL 976021, at *1.  Here, the State
adduced evidence that although appellant had reported his address to the Fort
Worth police as 2800 Lena in Fort Worth, Detective Ufkes, a Fort Worth police
officer, visited the address twice in August 2006 and was unable to find
appellant.  The second time Detective Ufkes went to the address, he spoke to
appellant’s sister, Teresa Wyatt, who lived there; she gave a sworn statement
saying that appellant did not live at 2800 Lena.  Wyatt confirmed at trial that
appellant did not live at 2800 Lena and that he had never lived there but had
received mail there.  Detective Tracy Tillerson, the officer to whom appellant
was supposed to report, testified that appellant did not inform her that he was
living anywhere other than 2800 Lena.  According to the testimony of Kristen
Ayala, a probation officer to whom appellant reported when he was released on
bond, appellant told her that he had been living at 729 Glen Garden in Fort
Worth since April 2006.  Even though appellant’s brother testified that
appellant was living at 2800 Lena in 2006, the jury was entitled to disbelieve
his testimony.  See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown
v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  The jury was likewise entitled to believe Wyatt’s
testimony that appellant had never lived at 2800 Lena even though she later admitted
that on March 16, 2006, she had signed a form for the Texas Department of Human
Services verifying that appellant was living at 2800 Lena.  Thus, we conclude
and hold that the evidence is legally sufficient to uphold appellant’s
conviction.  We overrule appellant’s eighth and thirty-sixth points.  See
State ex rel. Abbott v. Young, 265 S.W.3d 697, 706 (Tex. App.––Austin
2008, pet. denied) (distinguishing “actual innocence” in habeas context from
sufficiency of the evidence in direct appeal context).

Alleged Errors in Reporter’s Record

In his ninth point, appellant challenges what
he claims are two errors in the reporter’s record and asks this court to abate the
appeal for a correction of the reporter’s record.

Appellant
claims that the following prosecutor’s statement during closing argument was
omitted:  “Sgt. Hensley told me he checked the TCIC[[13]]
and found that the defendant never worked at Whataburger.”  The record before
this court shows that the prosecutor said the following:  “Defense counsel will
have you believe [appellant] was working.  Sergeant Hensley knew that wasn’t
true, because there wasn’t anything from the Texas Workforce Commission.  He
couldn’t find any employment.  So I don’t know where this Whataburger is coming
from.  He’s not working.”  Sergeant Hensley was the Fugitive Unit Task Force
officer who arrested appellant for the instant offense.  When asked how he went
about finding someone with a pending warrant, he testified:

We get his
information, his date of birth, his full name, any family members, and then . .
. before we leave, . . . we kind of put a packet together.  We run certain,
like, Texas Workforce Commission, if they’re working, we check addresses, we
have crime analysts that assist us with that kind of stuff.

 

Sergeant
Hensley did not testify that appellant was not working; instead, he testified
that when he finally arrested appellant, he was at a barbecue restaurant owned
by a relative.  Although the prosecutor’s statement as reflected in the record
appears to be an inaccurate statement of Sergeant Hensley’s testimony, whether
the prosecutor told the jury that Sergeant Hensley checked with TCIC or the
Texas Workforce Commission is irrelevant to whether appellant was actually
living at 2800 Lena.  It is undisputed that appellant was not present at 2800
Lena when a Fort Worth police officer went looking for him in August 2006; whether
appellant was absent because he was at work, simply not home, or did not actually
live there was the issue for the jury to resolve, not whether the officer who
finally arrested appellant verified through some database that appellant was
not working.

Appellant
also alleges that the reporter left out testimony from Ayala that appellant’s
stepbrother told her that appellant was not living at 729 Glen Garden.  Although
this information is in Ayala’s notes, which are included in the State’s open
file that was provided to appellant and included in the reporter’s record from
a pretrial hearing, there is no indication in the record that Ayala so
testified before the jury.  Ayala did testify that when she visited 729 Glen
Garden, appellant was not there, and she spoke to his stepbrother.[14] 
Appellant raised this challenge to the record in a presubmission motion before
this court, and in response, the reporter certified that Ayala’s testimony was
included in the reporter’s record provided.

Because
the first alleged inaccuracy is not relevant to the issues at trial or on
appeal and because even if the jury heard testimony from Ayala that appellant’s
stepbrother told her appellant was not living at 729 Glen Garden, any error in
the admission of that evidence would be harmless, abatement would not serve any
purpose here; moreover, we have already denied appellant’s objections to the
record in a presubmission order.[15]  See Tex. R. App.
P. 44.2(b).  We overrule his ninth point.

Ineffective Assistance

In his seventh and tenth through
thirty-fourth points, appellant alleges that his counsel provided ineffective
assistance at trial.[16]

Standard
of Review

To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct. at
2065.  Review of counsel’s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel’s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In
other words, appellant must show there is a reasonable probability that, but
for counsel’s unprofessional errors, the result of the proceeding would have
been different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability
is a probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding in which the result is being challenged.  Id. at 697, 104 S.
Ct. at 2070.

Sexually
Violent Offense

Appellant’s
tenth and eleventh points allege that counsel was ineffective for failing to
request a lesser included offense and for failing to cross-examine a witness;
both points are based on appellant’s contention that his indecency conviction is
not a sexually violent offense and therefore he was not required to report
anymore.  However, as we explained in our prior opinion, the legislature has
defined appellant’s indecency conviction as both a reportable conviction and a sexually
violent offense for which appellant is subject to lifetime registration unless
he applies for early termination through the trial court.  See Tex. Code
Crim. Proc. Ann. arts. 62.001(5)(A), (6)(A) (West Supp. 2011), 62.101(a) (West
Supp. 2011), 62.401–.408 (West 2006 & West Supp. 2011).  Nothing in the
record shows that appellant’s duty to report had terminated.  Thus, we overrule
his tenth and eleventh points.

SBC Phone Records

In his twelfth point, appellant contends
counsel was ineffective for failing to subpoena a Detective Benson who would
have testified that appellant called him from 2800 Lena a short time after
Detective Ufkes left the residence.  Appellant also contends in that point that
counsel should have requested a continuance to obtain SBC phone records, which
would confirm Detective Benson’s testimony and also show that Detective Ufkes
went by 2800 Lena at 6:35 a.m. on August 7 rather than 12:10 p.m.  Neither the
phone records nor Detective Benson’s proposed testimony are in the appellate
record; moreover, whether appellant called someone from 2800 Lena and at a
different time from when Detective Ufkes testified that he visited does not show
that appellant was actually living at that address at the time.  Thus, we
overrule appellant’s twelfth point.

Failure
to Call Sendria Ford

In
his thirteenth point, appellant contends his counsel was ineffective for
failing to call Sendria Ford, whom the defense had subpoenaed, because
appellant contends she could have verified that he was working at Whataburger
and that she had records verifying his work status at Whataburger.  He also
contends that through Ford, he could have shown that he was working nights at
Whataburger (thus, presumably explaining why he was not at 2800 Lena at 6:35
a.m.).  However, what Ford would have testified to or what her records would
show is not in the record, and whether appellant was working at Whataburger, or
somewhere else, or not working at all, does not show whether he was living at
2800 Lena at the time.  We overrule appellant’s thirteenth point.

Alleged
Violation of Motion in Limine

In
his fourteenth point, appellant complains that counsel was ineffective for
failing to object to the prosecutor’s opening statement during guilt-innocence,
which appellant claims violated a pretrial motion in limine by discussing
extraneous bad acts.  However, the part of the opening statement about which
appellant complains is limited to appellant’s failure to register, being
arrested for failure to register, and being on bond for failure to register,
all of which are related to the offense charged in the indictment. 
Accordingly, counsel was not ineffective for failing to object; we overrule
appellant’s fourteenth point.

Consolidation

In
his fifteenth point, appellant claims that counsel was ineffective for failing
to object to the State’s “consolidated evidence from cause 1197285 into the
trial of cause 1197286.”  The record shows that although the State moved to
consolidate the two cases, the trial court denied that motion.  Nothing in the
record indicates what appellant was charged with in number 1197285, but it
appears to be another failure to report offense.  Appellant does not specify what
evidence counsel should have objected to, but he does argue that Ayala’s
testimony about him telling her he had lived at 729 Glen Garden since April
2006 is extraneous because it pertains to the charge in 1197285.  However, even
if Ayala’s testimony is relevant to the charged offense in 1197285, it is likewise
relevant to the charged offense in this appeal; thus, we overrule appellant’s
fifteenth point.

State’s
Exhibits 5 and 6

In
his sixteenth point, appellant contends that counsel was ineffective for
failing to object to testimony by Ayala and evidence admitted through her
testimony.  Specifically, appellant complains that counsel should have objected
to State’s exhibit 5, a form entitled, “Tarrant County Community Supervision
and Corrections Department Probationer Data Sheet,” that appellant filled out
for Ayala in his own handwriting while he was released on bond and which
indicates that his address was 729 Glen Garden.  Appellant contends counsel
should have objected to the admission of this document because it is not
admissible under the rule 803(8)(B) hearsay exception because it involved
“matters observed by police officers and other law enforcement personnel.” 
Tex. R. Evid. 803(8)(B).  However, the form is not hearsay under rule
801(e)(2)(A) and thus was admissible.  Tex. R. Evid. 801(e)(2)(A) (providing
that a defendant’s own statements when offered against him are not hearsay); Stevenson
v. State, 304 S.W.3d 603, 616–17 (Tex. App.––Fort Worth 2010, no pet.); Logan
v. State, 71 S.W.3d 865, 869 (Tex. App.—Fort Worth 2002, pet. ref’d) (“The
defendant and the State . . . are party opponents.”).  Accordingly, we overrule
appellant’s sixteenth point.

In
his seventeenth and eighteenth points, appellant contends that counsel was
ineffective for failing to object to State’s exhibits 5 and 6 under rule 403
and 404(b).  Exhibit 6 is the second page of the form that appellant filled out
in compliance with his bond conditions entitled “Information On People You
Know.”  According to appellant, these documents are substantially more
prejudicial than probative because they do not contain his signature or Ayala’s
signature, they do not show a date or time, and they do not indicate that
appellant himself completed them.  However, Ayala testified that appellant
filled out the forms in his own handwriting and that she went over each of them
with him carefully.  Counsel was able to cross-examine her about the
documents.  The documents contained probative information and were more likely
to assist the jury on the issues rather than confuse or inflame it.  Accordingly,
we conclude and hold that counsel was not ineffective for failing to object to
State’s exhibits 5 and 6 on rule 403 grounds.  See Gigliobianco v. State,
210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (listing factors involved in rule
403 balancing test).  We overrule appellant’s seventeenth point.

Appellant
contends that counsel should have objected to exhibits 5 and 6 under rule
404(b) because Ayala later testified that she visited 729 Glen Garden, where
appellant had indicated he had lived since April 2006, and appellant was not
there.  She also testified that when she asked him about it, he told her he
moves around to be near work.  Appellant says that this evidence shows the
documents were admitted solely to prove character conformity.  However, Ayala’s
later testimony about his not being at 729 Glen Garden and his telling her that
he moved around a lot occurred at punishment.  There was no similar testimony
from Ayala at guilt-innocence; thus, exhibits 5 and 6 were admitted at
guilt-innocence as evidence pertinent to the charged offense, not as evidence
of extraneous acts.  Thus, rule 404(b) was not applicable, and counsel was not
ineffective for failing to object to the admission of exhibits 5 and 6 under
rule 404(b).  We overrule appellant’s eighteenth point.

Ayala’s Testimony

In his nineteenth point, appellant contends
that counsel should have objected to Ayala’s testimony about his telling her he
had lived at 729 Glen Garden since April 2006 as extraneous offense evidence. 
However, this evidence is probative of whether appellant was living at 2800
Lena in August 2006 when Detective Ufkes visited; thus, it was not extraneous
offense evidence.  See Tex. R. Evid. 404(b).  We overrule appellant’s
nineteenth point.

In
his twentieth point, appellant contends counsel was ineffective for failing to
request an instruction at guilt-innocence that all extraneous offenses must be
proven beyond a reasonable doubt.  Appellant contends that evidence he told
Ayala that he had been living at 729 Glen Garden since April 15, 2006 is an
extraneous act for which counsel should have asked for an appropriate jury
instruction.  However, the State did not use this evidence as proof of
character conformity; the State’s contention at guilt-innocence was that
appellant’s assertion that he had been living at 729 Glen Garden was truthful
and that appellant either lied when he said his address was 2800 Lena, or he
moved and did not inform the police.  Thus, this is not the type of extraneous
bad act evidence for which a beyond a reasonable doubt instruction is
required.  We overrule appellant’s twentieth point.

In
his twenty-first point, appellant contends that he was denied effective
assistance of counsel by the cumulative effect of counsel’s failure to object
to Ayala’s testimony combined with cross-examination by defense counsel that
elicited extraneous offenses.  Ayala testified at punishment that appellant
told her he moves around a lot to live where he is working.  According to
appellant, this testimony misled the jury to believe that he was moving around
without complying with registration requirements; thus, counsel should have
objected because evidence appellant attached to his brief––which is not part of
the appellate record––shows that Ayala knew he was in compliance with
registration requirements each time he moved.  Appellant contends that counsel
should have objected because Ayala’s testimony was misleading and unfairly
prejudicial.  See Tex. R. Evid. 403.  Appellant also contends that
counsel elicited further testimony regarding the misleading extraneous offenses.

At
punishment, the State elicited testimony from Ayala that when, in May 2007, she
went to visit appellant at 729 Glen Garden, he was not there.  When appellant
next reported to her, she confronted him about whether he lived there, and he
told her that he moves around to live close to where he works.  She also said
that as his bond caseload officer, she was concerned because he had trouble
reporting to her and thus complying with his bond conditions.  On
cross-examination, counsel elicited testimony from Ayala that appellant had
told her he was trying to find a job.  Counsel asked Ayala whether sex
offenders often have to move because they have difficulty finding jobs; she
said she did not know.  When counsel asked whether Ayala knew that appellant
was seeking employment in the food and beverage industry, she said that
appellant had reported to her that he was working at Mom’s Barbecue but that
appellant’s stepbrother told her appellant was not working there.  But the
stepbrother also said he sometimes saw appellant at that restaurant.

Nothing
about Ayala’s testimony is misleading.  She simply testified as to what
appellant told her as part of his bond conditions and what her investigation
uncovered.  Although counsel did elicit testimony from her that appellant may
have lied when he told her he was working at Mom’s Barbecue, this evidence is
no more damaging than other evidence that appellant lied to Ayala about where
he was living.  We conclude and hold that counsel was not deficient for failing
to object to Ayala’s testimony or for his cross-examination of Ayala, which did
put before the jury the idea that sex offenders may have trouble finding places
to live convenient to employment.  See Tex. R. Evid. 403; Gigliobianco,
210 S.W.3d at 641–42.  We overrule appellant’s twenty-first point.

          Appellant
claims in his twenty-ninth point that counsel was ineffective for failing to
object to Ayala’s testimony at punishment that appellant’s stepbrother told her
appellant did not live at 729 Glen Garden and did not work at Mom’s Barbecue.  According
to appellant, his stepbrother’s statements are testimonial and not admissible
under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). 
Contrary to appellant’s assertions, Ayala did not testify that appellant’s
stepbrother told her appellant did not live at 729 Glen Garden.  She said that
she had visited that address, that appellant was not there, that she later questioned
appellant about it, and that he told her he moved around to be near work.  She
also testified that she was concerned “[b]ecause the address he gave me of 729,
he did not live there.”  In an attempt to mitigate the effect of this
testimony, counsel questioned Ayala about whether sex offenders often have
trouble finding work and have to move around a lot.  Ayala testified about the
stepbrother telling her that appellant did not work at Mom’s Barbecue in
response to counsel’s question as to whether she knew if appellant was
attempting to find a job in the food and beverage industry.  However, in that
same line of questioning, Ayala testified that appellant was in the process of
getting a job at Luby’s.

          Even
if the stepbrother’s statement about appellant not working at Mom’s Barbecue
was testimonial, it was redundant in light of other evidence that appellant was
not truthful with Ayala.  Moreover, it was elicited at punishment and therefore
was not “considered as substantive evidence of guilt and character conformity
in violation of [rule] 404(b),” as asserted by appellant.  See Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2011) (providing that at
punishment trial court may consider any evidence relevant to sentencing
including character of defendant).  We overrule appellant’s twenty-ninth point.

Alleged
Violation of Pretrial Discovery Orders

In
his twenty-second point, appellant claims counsel was ineffective for failing
to object to Ayala’s testimony as violative of the reasonable notice
requirement of rule 404(b).  Tex. R. Evid. 404(b).  The record contains notices
from the State dated fifteen days before trial, in cause numbers 1197285 and 1197286,
indicating that Ayala would testify about appellant’s telling her he was living
at 729 Glen Garden, that Ayala went to that address and appellant’s stepbrother
told her appellant was not living there, and that appellant told her he moves
around to live where he is working.  See Martin v. State, 176 S.W.3d
887, 900–01 (Tex. App.––Fort Worth 2005, no pet.).  Thus, no objection was
necessary.  We overrule appellant’s twenty-second point.

Appellant
contends in his twenty-third point that his counsel was ineffective for failing
to object to the State’s violation of a pretrial discovery order when the State
impeached appellant’s witness with prior felony convictions.  The Motion for
Disclosure of Impeaching Information that the trial court granted compelled the
State to provide such information only for witnesses that the State intended to
call; thus, it did not apply to appellant’s witnesses.  We overrule appellant’s
twenty-third point.

Remarks and Questioning by the State

In his twenty-fourth point, appellant
challenges counsel’s effectiveness for failing to object to the following
argument by the prosecutor at guilt-innocence:

I mean, honestly, why
do we care where Mr. Darnell’s at?  Because he’s a sex offender.  He is a
convicted sex offender.  He’s required to by law - - this is his paperwork. 
His victim was nine years old  He abused a child, a nine-year-old girl.  He got
to go to prison for that.  That’s why we care.

 

To
prove the offense of failure to register, the State had to prove that appellant
had a reportable conviction for which he was required to register.  Tex. Code
Crim. Proc. Ann. arts. 62.051, .102(a).  Thus, the jury already had before it
evidence of appellant’s conviction for indecency with a child.  Although the child’s
age was not part of the evidence before the jury and not relevant to whether
appellant failed to register, counsel might well have strategically decided not
to call additional attention to that fact by objecting.  Moreover, it is
unlikely that the jury was so inflamed by this remark that it decided the case
based on it rather than the sufficient evidence supporting conviction.  See
In re A.J.G., 131 S.W.3d 687, 692–93 (Tex. App.––Corpus Christi 2004, pet.
denied) (discussing remarks calculated to appeal to public sentiment or
community outrage).  We conclude and hold that counsel was not ineffective for
failing to object to this remark.  We overrule appellant’s twenty-fourth point.

In
his twenty-fifth point, appellant claims that the cumulative effect of
counsel’s failure to request a curative instruction and move for mistrial when
the court sustained an objection to leading questions by the prosecutor deems
counsel ineffective.  When during cross-examination, Wyatt, appellant’s sister,
testified that she told TDHS that appellant was living at 2800 Lena, the State
followed up by asking her, “Is it fair to say, you’re trying to avoid getting
in any kind of trouble if you said that the Defendant was living on Glasgow
with you?”  She said yes.  The State then asked, “That’s the reason you told the
caseworker about the 28 - -.”  Counsel objected to the question as leading, and
the trial court sustained the objection.  Counsel did not ask for a curative
instruction or move for a mistrial.  However, neither was necessary here because
the jury was not left with a false impression; the TDHS form was admitted as
evidence, and the jury was able to gauge Wyatt’s credibility on direct and
cross.  We overrule appellant’s twenty-fifth point.

Appellant’s
twenty-sixth point also brings into question counsel’s response to a leading
question by the State.  Appellant claims that during direct of Detective
Tillerson, who was the officer to whom appellant was to report for registration
purposes, the prosecutor “framed his questions, asserting as fact, that the
appellant moved to three addresses without notifying Ms. Tillerson.”  The
prosecutor questioned Detective Tillerson as follows:

Q.  Okay.  What
address did this Defendant give you where he was living?

 

A.  I believe then on
Lena Street.

 

Q.  2800 block of
Lena Street, Fort Worth, Texas?

 

A.  Yes.

 

. . . .

 

Q.  Did you explain
to this Defendant that if he moved or changed addresses, he personally had to
come see you?

 

A.  Yes.

 

Q.  Did he
acknowledge he understood that?

 

A.  Yes.

 

Q.  After March 20th
of 2006, at any time, the year 2006, did the Defendant come to you and tell you
that he was living at a different address?

 

A.  In 2006, no.

 

Q.  Never personally
came in and said, hey, I’ve moved to 729 Glen Garden?

 

A.  No.

 

Q.  I’m now living at
1404 Glasgow Road?

 

A.  No.

 

Q.  I’m living at - -
I think it’s the 3400 block of James Avenue?

 

A.  No.

 

Q.  At all times in
2006, the address that this Defendant had given to you personally, as required
by law, was the 2800 block of Lena Street, Fort Worth, Texas?

 

A.  Yes.

 

          [COUNSEL]: 
Judge, I object.  I’ve been refraining from objecting to leading questions, but
it’s gone on long enough.

 

          THE COURT: 
Sustained.

 

          According
to appellant, “[w]ithout any curative instructions, the false impression was
left on the minds of the jury” that he had moved at least three times without
informing police.  He complains that this was exacerbated by the prosecutor’s
closing argument stating that, “I do not have to go to three or four different addresses
over two or three days to hunt you if you are where you said you are,”
referring to officers’ having had to go to several different locations before
finding appellant in August 2006.  Appellant contends counsel should have asked
for an instruction to the jury to disregard.

          Appellant’s
sister had already testified that he never lived at 2800 Lena.  Counsel’s
strategy to discredit her testimony by showing she lied to TDHS was apparent. 
The State had already established through Detective Ufkes that appellant was
not at 2800 Lena when the detective visited the house and that police finally
found appellant at the third location they visited.  In addition, the State had
already established through Detective Tillerson that 2800 Lena was the only
address appellant had given the Fort Worth police.  Thus, even if counsel’s
strategy for allowing the leading questioning to go on was not reasonable, we
do not believe there is a reasonable probability that the result of the trial
would have been different if counsel had objected sooner.  We overrule
appellant’s twenty-sixth point.

          In
his twenty-seventh point, appellant contends counsel was ineffective for
failing to object to improper argument that misstated the law.  During closing,
the prosecutor called State’s exhibit 5, the information form appellant filled
out while on bond stating that he had lived at 729 Glen Garden since April 2006,
“a handwritten confession.”  Appellant contends that the form shows no indicia
of a confession, that the jury was misled to believe that appellant had legally
confessed to the offense, and that his defense was undermined and his
credibility called into question.  Defense counsel had already addressed
exhibit 5 in his closing argument, stating “this entire family has problems with
dates and places and locations.  He told them that, but did you ever hear the
State say, he, in fact, was living at the Glen Garden address?  There was no
testimony as to that.”  Because counsel had already dealt with this evidence,
he may very well have not wanted to call attention to the State’s
characterization of the exhibit as a confession when the document’s nature was
clearly explained when it was admitted.  We conclude and hold that counsel was
not ineffective for failing to object to this argument, and we overrule
appellant’s twenty-seventh point.

          In
his twenty-eighth point, appellant contends counsel was ineffective for failing
to object to the prosecutor’s argument outside the record that appellant never
worked at Whataburger.  As we have explained, whether appellant worked at
Whataburger is not relevant to whether he was living at 2800 Lena. 
Accordingly, we overrule appellant’s twenty-eighth point.

          In
his thirty-first point, appellant claims counsel was ineffective for failing to
object and move for mistrial when the prosecutor “improperly [led] the jury to
believe that the appellant, in fact, was a habitual criminal” during voir dire
questioning.  The record shows that the prosecutor was questioning the jury
about the purpose of the habitual offender paragraphs in the indictment (that
if proven they increase the range of punishment) and what type of evidence
would be appropriate for punishment rather than guilt/innocence.  Nowhere does
the prosecutor intimate that appellant himself is a habitual offender, only
that he was charged with such.  Hanson v. State, 269 S.W.3d 130, 134
(Tex. App.––Amarillo 2008, no pet.).  We overrule appellant’s thirty-first
point.

          In
his thirty-second point, appellant claims counsel was ineffective for failing
to object to the prosecutor’s suborning perjury when he asked Ayala whether
appellant was charged with a first-degree felony, knowing that the failure to
report offense is a second degree felony.  Not only is the record silent as to
the prosecutor’s knowledge of what Ayala would answer or her state of mind, the
question about whether appellant was on bond for a first degree felony was
proper because with the inclusion of the habitual offender paragraphs in the
indictment, if proven, appellant was charged with a first-degree felony.  See
Tex. Code Crim. Proc. Ann. art. 62.102(b)(2), (c); Tex. Penal Code Ann. § 12.42(b)
(West Supp. 2011).  We overrule appellant’s thirty-second point.

          In
his thirty-fourth point, appellant contends counsel should have objected to the
following argument expressing the prosecutor’s personal opinion of guilt:  “The
Defendant is the convicted sex offender in this case, and it is his burden to
apprise law enforcement of where he is . . . . He may not like it, but it’s his
duty and it’s the law.”  According to appellant, this remark “implied that
there is evidence that the appellant has failed to register previously.”  We do
not believe the remark can be so construed, but even if it could, we conclude
and hold that any error was harmless; thus, counsel’s failure to object to this
remark did not deprive the trial of a reliable result.  See Allen v. State,
149 S.W.3d 254, 261 (Tex. App.––Fort Worth 2004, pet. ref’d) (holding more
direct statement of prosecutor’s opinion harmless).  Accordingly, we overrule
appellant’s thirty-fourth point.

          Allegedly
Eliciting Improper Testimony and Failing to Call Witness

Appellant
contends in his thirtieth point that counsel was ineffective for eliciting
testimony of appellant’s previous convictions.  During questioning by defense
counsel whether appellant had ever lived at the 1404 Glasgow address, appellant’s
sister Wyatt responded that he had, “[e]ach time he came home from prison.”  Counsel
repeated “each time he came home from prison” in two of his subsequent
questions.  However, the State had already introduced evidence of appellant’s
prior conviction for indecency with a child resulting in at least one nine-year
prison sentence.  Counsel may well have wanted to minimize any potential effect
of Wyatt’s answer by refraining to object to her statement.  As for repeating
her answer; the jury was well aware that appellant had a prior record of at
least a sex offense, so the effect was likely not as significant as it would
have been in a trial in which a prior offense was not a predicate finding for
the charged offense.  We conclude and hold that in the absence of a record
showing counsel’s reason from refraining from objecting, we cannot say that
counsel was ineffective for so refraining.  See Lopez v. State, 343
S.W.3d 137, 143–44 (Tex. Crim. App. 2011).  We overrule appellant’s thirtieth
point.

          In
his thirty-third point, appellant contends that counsel was ineffective for
failing to subpoena a licensed professional counselor as requested by appellant
to testify that appellant was not a continuing threat to children.  According
to appellant, that was his only viable defense.  But whether appellant
requested that counsel subpoena this counselor and what the counselor would
have testified to are not included in our appellate record.  Without such
evidence in the record, we cannot determine whether the trial’s result would
have been different but for this alleged deficiency by counsel.  We overrule
appellant’s thirty-third point.

Summary

We
have thoroughly reviewed the record as to each instance of alleged error by
counsel claimed by appellant.  We find nothing that would, standing alone or
cumulatively, constitute ineffective assistance.  See Lopez, 343 S.W.3d
at 143 & nn. 35–36; Ex parte Niswanger, 335 S.W.3d 611, 615–16 (Tex.
Crim. App. 2011).

Jury
Charge

In
his thirty-fifth and thirty-seventh points, appellant contends that the jury
charge at guilt-innocence failed to require the jury to find beyond a
reasonable doubt that his indecency conviction was reportable and that the jury
charge at punishment failed to require the jury to find the habitual offender
allegations beyond a reasonable doubt in violation of Apprendi v. New Jersey. 
530 U.S. 466, 120 S. Ct. 2348 (2000).  Upon review of both charges, they
clearly require the jury to find beyond a reasonable doubt that appellant’s
indecency conviction is reportable and that appellant committed the offenses
alleged in the habitual offender paragraph of the indictment.  We overrule
appellant’s thirty-fifth and thirty-seventh points.

Conclusion

Having
overruled all of appellant’s thirty seven points, we affirm the trial court’s
judgment.

 

PER CURIAM

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  November 10,
2011








 









[1]See Tex. R. App. P. 47.4.





[2]Because appellant raises
so many points, we will only discuss relevant background facts within our
discussion of each point.





[3]Appellant filed his notice
of appeal on June 27, 2008; we affirmed the conviction on April 9, 2009, and
the mandate from this court’s opinion was issued on October 16, 2009.





[4]Appellant had filed a
prior pro se Motion For Speedy Trial in cause number 1037163D on October 5,
2007, while he was represented by counsel.  It appears that the trial court did
not rule on this motion.





[5]The record does not
indicate why the case was reindicted for a second time, but the third
indictment adds a paragraph indicating that the original indictment in cause
number 1037163D was filed September 18, 2006 and was pending as of April 23,
2010.





[6]The trial court reminded
appellant that it could take judicial notice of its file.  The record in cause
number 1037163D shows that on June 2, 2008, the trial court set appellant’s
bond at $25,000.





[7]The record contains a copy
of a judgment in an unlawful carrying of a weapon case that was signed by Judge
Gilfeather sentencing appellant to two hundred days’ community supervision.





[8]Appellant had also been
appointed a fourth counsel for standby purposes during pretrial.





[9]In a postsubmission brief,
appellant claimed that he was prejudiced because the State would not have been
able to use statements he made to his bond caseload officer against him had he
been tried earlier.  However, as shown below, the State had ample other
evidence upon which to convict appellant.





[10]Appellant complains
within his first point that he was held without a bond he could afford for more
than ninety days after the State announced ready.  See Tex. Code Crim.
Proc. Ann. art. 17.151 (West Supp. 2011).  However, this court has previously
addressed and rejected appellant’s complaint that the trial court abused its
discretion by denying him a reduction in bail.  Ex parte Darnell, No.
02-08-00229-CR, 2009 WL 976021, at *1 & n.7 (Tex. App.––Fort Worth Apr. 9,
2009, pet. ref’d) (mem. op., not designated for publication).





[11]Appellant couches part of
this argument in terms of being eligible for mandatory supervision parole;
however, his argument is still that his indecency conviction should be
categorized based on a prior trial court’s decision in 1989 (of which there is
no evidence) rather than the mandatory provision in article 62.001(6)(A) of the
code of criminal procedure.  See Tex. Code Crim. Proc. Ann. art.
62.001(6)(A) (West Supp. 2011); Ex parte Darnell, 2009 WL 976021, at *1.





[12]Appellant contends that
SBC phone records, which were not introduced at trial, would have shown that he
made phone calls to his parole officer from 2800 Lena, the address at which he
was supposed to be living; however, this evidence does not conclusively prove
that appellant was actually living at 2800 Lena at the time he made the phone
calls.





[13]TCIC is a statewide
criminal information database used by law enforcement agencies.  Peacock v.
State, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002).





[14]In his closing argument, the
prosecutor characterized this testimony as follows:  “729 Glen Garden.  She
goes there, she talks to his stepbrother, half-brother, he don’t live here.”





[15]Appellant also claims
that Ayala testified at guilt-innocence that he tested positive for THC.  The
record shows that Ayala testified at punishment that appellant told her while
he was released on bond that he would have tested positive for marijuana.  Even
if this testimony is misplaced in the record, we would hold that the testimony
was harmless in light of our review of the entire record.





[16]In his seventh point,
appellant complains that counsel failed to present eight items of evidence to
the jury that appellant contends would prove that he is actually innocent. 
However, appellant failed to file a bill of exception as required by the
appellate rules.  See Tex. R. App. P. 33.2.  Therefore, we may not
consider these items because they are not included in the appellate record.  Ramirez
v. State, 104 S.W.3d 549, 550–51 & n.9 (Tex. Crim. App. 2003); Booth
v. State, 499 S.W.2d 129, 135 (Tex. Crim. App. 1973).