

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-06-420-CR**
**NO. 2-06-421-CR**

PATRICE MURPHY                                                  APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

The question this court is asked to answer is whether the trial court erred

by denying Appellant Patrice Murphy's motion to dismiss based on her claim

that her right to a speedy trial was violated.[1]  Because Murphy did little to seek

---

[1] *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10.

a speedy trial and because she suffered nominal personal or defense prejudice from a lengthy delay that was largely attributable to the State, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 1998, Cooke County Sheriff's Deputy Bobby Faglie was on patrol when he saw a green Jeep Cherokee leave a rest stop near the 489 mile marker on northbound Interstate 35. As the Jeep entered the highway, Faglie noticed that it failed to signal. As Faglie watched, the Jeep crossed the center stripe between the northbound lanes, then veered back over the yellow stripe onto the shoulder. Faglie followed the Jeep for approximately a half mile. Believing that the driver's faculties were impaired, he initiated a stop.

The driver, Murphy, did not have a driver's license with her and identified herself with an Illinois traffic citation. The Jeep was a rental vehicle rented to Tarita James, who was riding as a passenger. When Faglie inquired where they were going and where they had been, Murphy responded that they had been sleeping at the rest stop and were still groggy, and that they were going to St. Louis, Missouri, after a two-week stay in Dallas, visiting James's aunt.

Officer Faglie had Murphy exit the Jeep and asked her if the vehicle had insurance. When Murphy responded that she did not have insurance for the Jeep, Faglie went to the passenger side of the vehicle and made the same inquiry to James. She handed Faglie a rental agreement, issued in James's

2

name from St. Louis International Airport, which showed that the Jeep was due back two days before, on March 23, 1998.  James told Faglie that they were in Dallas for two days and could not find her aunt's house.

Faglie determined that Murphy was not intoxicated and issued a warning citation for failure to indicate a lane change and failure to maintain a single lane of traffic.  He gave a warning citation to Murphy and then asked James for consent to search the vehicle; she consented both verbally and in writing.

During his initial search of the vehicle, Faglie found two purses on the center console of the vehicle.  In the purses, he found a combined total of $6,636, and in James's purse he found five small bags of cocaine.  Faglie handcuffed James and Murphy and placed them under arrest, while his partner read James and Murphy their *Miranda* rights.

When Faglie and his partner opened the hatchback of the vehicle, they found several shopping bags and nine suitcases, seven of which contained eighty-two insulation-wrapped packages totaling over four hundred pounds of ninety-one percent pure cocaine and a forty-eight percent mixture of amphetamine.  Murphy and James were indicted for the offenses of possession of cocaine over 400 grams and possession of amphetamines over 400 grams.  On January 20, 2000, the State filed a notice to consolidate Murphy's and

James's cases; however, on August 9, 2000, the State withdrew its notice to consolidate the cases and proceeded against Murphy and James separately.

James was initially found guilty and sentenced to two life sentences by a jury. James appealed to this court. *See James v. State*, 102 S.W.3d 162, 167 (Tex. App.—Fort Worth 2003, pet. ref'd). Although this court held that Faglie had reasonable suspicion to stop Murphy, and that Faglie had both written and verbal consent to search the vehicle, we reversed James's convictions on January 9, 2003, holding that James had been harmed by the improper admission of a prior conviction. *Id.* at 172–73, 182. This court remanded James's case back to the trial court. *Id.* at 182. Afterwards, on February 3, 2005, James entered into a plea agreement with the State. The terms of the agreement were that James would plead nolo contendere to both charges, agree to be sentenced to twenty years' incarceration, and agree to testify against Murphy.

The clerk's record shows a flurry of activity pertaining to Murphy's case by both Murphy and the State between her May 14, 1998[2] indictment and August 2000. During this period, Murphy filed her own motions for continuance on July 07, 1998, and on December 03, 1998. Murphy also

---

[2] Murphy was indicted for possession of cocaine on May 14, 1998, and possession of amphetamine on June 25, 1998.

agreed to the State's motions for continuance filed April 08, 1999, June 14, 1999, June 23, 1999, and February 18, 2000. Following these motions, the trial court set an August 21, 2000 trial date.

The record then shows no activity concerning Murphy's cases for nearly four years. But on June 09, 2004, the record shows that the State requested a jury trial setting. The trial court set a trial date of November 1, 2004. The trial court also issued an order setting a September 9, 2004 hearing concerning the sufficiency of Murphy's bond. The day before the hearing was to be conducted, Murphy, citing medical reasons, filed a motion for continuance. On October 29, 2004, again citing medical reasons, Murphy filed a motion for continuance concerning the November 1, 2004 trial date. Murphy's trial was reset for February 3, 2005. Murphy again filed a motion for continuance. In this motion, Murphy's attorney alleged a scheduling conflict. On October 28, 2005, Murphy waived her right to a jury trial and her trial was eventually reset for November 1, 2005.

On November 1, 2005, Murphy appeared for trial with counsel and filed a motion to dismiss asserting that she had been deprived of her right to a speedy trial. She also filed an application for probation. Murphy, who was now pregnant, entered open pleas of guilty for both charges and the trial court found her guilty. The trial court set the punishment hearing for February 17, 2006—a

5

date that allowed Murphy to travel back to Chicago, where she had been living for the previous five years, and have her baby. Murphy was sentenced to twenty years' incarceration. On March 20, 2006, Murphy filed a motion for new trial, claiming that her pleas were entered into involuntarily and that she had received ineffective assistance of counsel. Without specifying on which grounds Murphy's motion was granted, the trial court granted a new trial. Murphy's case was then set for jury trial on July 17, 2006. On July 10, 2006, with new counsel, Murphy again requested another continuance and also filed a motion to dismiss, claiming the State failed to provide her a speedy trial. The trial court granted the continuance and scheduled a hearing on the motion to dismiss. After the hearing, the trial court denied Murphy's motion. On September 20, 2006, a jury found Murphy guilty of both charges. Two days later, the trial court assessed punishment at twenty years' incarceration for each charge, with both sentences to run concurrently. This appeal followed.

## III. DISCUSSION

In her sole point, Murphy argues that the trial court erred by denying her motion to dismiss. Citing both the United States and Texas Constitutions, Murphy specifically complains that her right to a speedy trial was violated.

### A. The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee an accused the right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10*; see also Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex. App.—Fort Worth 2008, pet. ref'd). Texas courts analyze claims of a denial of this right, both under the federal and state constitutions, the same. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). The right attaches once a person becomes an "accused," that is, once one is arrested or charged. *United States v. Marion*, 404 U.S. 307, 321, 92 S. Ct. 455, 461 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy-trial provision of the Sixth Amendment."). Supreme Court precedent requires state courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing the four *Barker v. Wingo* factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused. 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *Orand*, 254 S.W.3d at 565. While the State has the burden of justifying the length of delay, the defendant has the

7

burden of proving the assertion of the right and showing prejudice. *See Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *see also Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused made a prima facie showing of prejudice, the State must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay"). The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993) (citing *Doggett v. United States*, 505 U.S. 647, 657, 112 S. Ct. 2686, 2693 (1992)). Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008).

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Doggett*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992). There is no set time element that triggers the analysis, but the court of criminal appeals has held that a delay of four months is not sufficient while a seventeen-month delay is. *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) ("Appellant herein was tried [for rape] approximately four months after he was bench warranted from the Texas

Department of Corrections. It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'"); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ("Although there is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases, . . . a seventeen month delay is sufficient to raise the issue."); *see also Doggett*, 505 U.S. at 651, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (noting that courts have generally found post-accusation delay "presumptively prejudicial at least as it approaches one year"). Once the *Barker* test is triggered, courts must analyze the speedy trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). No one factor is either a necessary or sufficient condition to the finding of a deprivation of the speedy trial right. *Id*. Instead, the four factors are related and must be considered together along with any other relevant circumstances. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. As no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case. *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2192).

Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's speedy trial right was actually violated. *See Strunk v. United States*, 412 U.S. 434, 440, 93 S. Ct. 2260, 2271 (1973). Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon the societal interest in trying people accused of crime, rather than granting them immunization because of legal error. *Cantu*, 253 S.W.3d at 281. Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *See Barker*, 407 U.S. at 534–35, 92 S. Ct. at 2192 (rejecting defendant's claim of a speedy trial violation despite a five-year delay when the record strongly indicated that the defendant did not actually want a speedy trial). The constitutional right is that of a speedy trial, not dismissal of the charges. *Cantu*, 253 S.W.3d at 281.

The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. *Id*. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. *Id*. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy. *Id*.

10

**B.    Standard of Review**

In reviewing the trial court's ruling on an appellant's speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components. *Zamorano*, 84 S.W.3d at 648.    Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question.  *Cantu*, 253 S.W.3d at 281.

Under this standard, we defer not only to a trial judge's resolution of disputed facts, but also to the trial judge's right to draw reasonable inferences from those facts.  *Id.* at 282.   In assessing the evidence at a speedy trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted.  *Id.*  The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so.  *Id.*  And all of the evidence must be viewed in the light most favorable to the trial judge's ultimate ruling.  *Id.*  Because Murphy lost in the trial court on her speedy trial claim, we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports.  *Id.* at 282.

**C.** **Analysis of the *Barker* Factors**

**1.** **Length of Delay**

The length of delay is a "triggering mechanism" for analysis of the other *Barker* factors. *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93; *Orand*, 254 S.W.3d at 566. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other [*Barker*] factors that go into the balance." *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93. Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. 2686, 2691 n.1; *Munoz*, 991 S.W.2d at 821–21. This *Barker* factor "is actually a double enquiry." *Doggett*, 505 U.S. at 651, 112 S. Ct. at 2690.

> "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, (citation omitted), since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."
> *Id.*

12

The State here concedes that "the initial trial of Murphy was not speedy." We agree. Specifically, we consider the almost four-year inactivity between August 2000 and June 2004 regarding Murphy's case sufficient to trigger consideration of the other *Barker* factors.

### 2. Reasons for the Delay

Under *Barker*, "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. This factor seeks to ensure that courts not simply concentrate on the sheer passage of time without taking into account the reasons underlying the delay. *See, e.g., Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002). The inquiry into causation involves a sliding scale: deliberately dilatory tactics must be weighed more heavily against the State than periods of delay resulting from negligence. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Furthermore, valid reasons for delay should not be weighed against the State. *See Munoz*, 991 S.W.2d at 824. And delay which is attributable in whole or in part to the defendant can weigh against the defendant and may even constitute a waiver of a speedy trial claim. *See Barker*, 407 U.S. at 529, 92 S. Ct. at 2191–92 (noting that delay attributable solely to defendant "may be given effect under standard waiver doctrine"); *see also Dickey v. Florida*, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial

13

safeguard in the case of a delay for which he has, or shares, responsibility");

*United States v. Anderson*, 902 F.2d 1105, 1110 (2nd Cir.), *cert. denied*, 498 U.S. 867 (1990) (holding that there was no speedy trial violation where, among other things, defense counsel agreed to delays and continuances for purposes of plea negotiations).

Although the period of time between Murphy's arrest in March 1998 and her eventual trial in November 2005 exceeded seven years, this court perceives three distinct time periods: 1) the time period between her arrest and the setting of an August 21, 2000 trial date, 2) the period of inactivity between this trial date and the State's request for a jury trial in June 2004, and 3) the time period between that request and her entering pleas of guilty on November 1, 2005.

Here, the State offered evidence at the motion to dismiss hearing that Murphy was the first to request multiple continuances and also agreed to multiple continuances with the State during the first period of time. There was also ample evidence that Murphy had requested numerous continuances during the third time period. The trial court could have reasonably concluded that Murphy was responsible for both of these periods of delay.

The second time period, however, is quite a different matter. No evidence was presented as to why there was no activity during this nearly four-

14

year period.  The primary burden of insuring that cases are brought to trial rests on the courts and prosecution.  *Barker*, 407 U.S. at 527, 92 S. Ct. at 2190.  With this burden in mind, the trial court could have only reasonably concluded negligence on the part of the State to prosecute the case.  This period of time must be counted against the State.  But because there was no evidence that the State was engaging in purposeful dilatory tactics, it does not count heavily against the State.  *See id.*  In sum, the State did not justify most of the lengthy delay in this case.  Consequently, this factor tilts in favor of Murphy's claim that she was denied a speedy trial.

### 3.    Assertion of the Right

We next consider the extent to which Murphy affirmatively sought a speedy trial.  *Barker*, 407 U.S. at 531–32, S. Ct. at 2192.  The nature of the speedy trial right makes "it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." *Id.* at 527, 92 S. Ct. at 2193.  Even though it is the State's duty to bring the defendant to trial, it is the defendant's duty to assert the right to a speedy trial.  *Id*. at 527–28, 92 S. Ct. at 2193 ("We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.").

15

Whether and how a defendant asserts this right is closely related to the other three factors because the strength of the defendant's efforts will be shaped by them. *Id*. at 531, 92 S. Ct. at 2196. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* Thus, the defendant's assertion of the right to a speedy trial—or the failure to assert it—is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id*. at 531–32, 92 S. Ct. at 2196. Filing for a dismissal instead of a speedy trial generally weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, the defendant should provide cogent reasons for this failure. *Id.; see also Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.)

Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, only a dismissal. *Barker*, 407 U.S. at 534–36, 92 S. Ct. 2192–95 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial."); *see also Harris*, 827 S.W.2d at 957

("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."); *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) ("[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing").

In *Palmer*, the Fifth Circuit held that because the defendant "first asserted his right thirty months after his arrest, which was one month after he first received notification of his indictment, and he complained at that time only of the 22-month pre-indictment delay," his "silence during the entire pre-indictment period work[ed] against him because it suggest[ed] that any hardships he suffered were either minimal or caused by other factors." *Palmer*, 537 F.2d at 1288.

Likewise, in this case, Murphy did not assert her right to a speedy trial until she filed her motion to dismiss on November 1, 2005, ninety-two months after she had been arrested. She again filed a motion to dismiss, citing violation of her speedy trial right, July 10, 2006. This motion was filed more than nineteen months after she had sought and gained multiple continuances regarding her November 1, 2004 trial date.

Even though Murphy testified that she had asked her attorney several times why her trial had not commenced, the trial court could have reasonably

17

concluded that Murphy's silence during the period between her arrest and these motions indicated that Murphy was not, in reality, asserting her right to a speedy trial, but rather wanted only a dismissal. Because Murphy did not assert her right to a speedy trial for a lengthy period of time, and then once she did assert the right it was in the form of a motion to dismiss the charges against her, we conclude that this factor weights against Murphy and against her claim that she was denied her right to a speedy trial.

### 4. Prejudice

Because "pretrial delay is often both inevitable and wholly justifiable," the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett*, 505 U.S. at 656, 112 S. Ct. at 2692. When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *See Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193).

Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and

18

testimony can rarely be shown. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Dragoo*, 96 S.W.3d at 315. The possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence is the most serious interest that the right to speedy trial protects because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692. Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Id.* at 655, 112 S. Ct. at 2693. And the presumption of prejudice grows and intensifies over time. *Id*. at 656, 112 S. Ct. at 2693. But the presumption of prejudice to a defendant's ability to defend himself can be "extenuated . . . by the defendant's acquiescence" in the delay. *Id.* at 658, 112 S. Ct. 2694.

Here, except for the first few months after her arrest, Murphy was out on bond at all relevant times. Thus, pretrial incarceration serves as a minimal factor in determining whether she suffered prejudice. And even though Murphy testified that over the last few years it seemed she lived her life "in jail . . . in the real world" because of her concerns of when she would need to come to Texas in order to participate in her trial, we conclude that this is nothing more than "generalized expressions of anxiety and concern [that] amount to little

more than a nominal showing of prejudice." *Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008). Finally, even presuming that the length of delay impaired Murphy's defense, that prejudice, as well, was minimal. While Murphy testified that she had difficulty "remember[ing] a lot of things," she never testified how this might impair her defense at trial. Murphy does not claim that witnesses have died or memories, other than her own, have diminished due to the delays relating to her case. In short, on this record, the trial court could have reasonably concluded that Murphy failed to demonstrate any actual prejudice or that any presumed prejudice was minimal. This factor weighs against finding Murphy's speedy trial right was violated.

### 5. Balancing the Factors

Having addressed the *Barker* factors, we must now balance them. Weighing in favor of finding that Murphy's speedy trial right was violated are the facts that the delay here was excessive and that the State offered no valid reason for the lion's share of the delay in this case—the nearly four-year gap of inactivity pertaining to these charges. Weighing against finding a violation of Murphy's speedy trial right is the fact that she failed to assert her right until more than six years after her indictment, and then, she asserted that right in the form of a motion to dismiss and on the eve of trial—indicating that she did not really want a speedy trial, but wanted only a dismissal of the charges.

20

Further, there is a lack of any substantial personal or defense prejudice resulting from the delay. We hold that the weight of these factors, balanced together, supports the trial judge's ruling to deny Murphy's motion to dismiss and that there was no violation of her right to a speedy trial. *See Barker*, 407 U.S. at 534, 92 S. Ct. at 2194 (holding that there was no speedy trial right violation because defendant was not seriously prejudiced by five-year delay between arrest and trial and that defendant did not really want a speedy trial, rather, a dismissal of charges); *Dragoo*, 96 S.W.3d at 315 (holding that there was no speedy trial right violation because defendant demonstrated no serious prejudice by more than three-year delay between arrest and trial and waited until just before trial to assert his right to a speedy trial); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (holding that there was no speedy trial right violation where defendant demonstrated no prejudice by four-year delay between arrest and trial and defendant waited until one month before trial to assert his right). We overrule Murphy's sole point.

## IV. CONCLUSION

Having overruled Murphy's sole point, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL: GARDNER and WALKER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

WALKER, J. concurs without opinion.

PUBLISH

DELIVERED: February 5, 2009

22