

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-17-00210-CR

MARCO MCCAIN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F16-800-431

----------

## MEMORANDUM OPINION[1]

----------

The proceedings in the trial court, in which appellant Marco McCain repeatedly alternated between expressing a desire to represent himself and voicing that he wanted representation by counsel, resembled a long volley in a tennis match. When the volley ended, McCain represented himself at trial, and a jury convicted him of aggravated assault. In four issues on appeal that arise in

----------

[1]*See* Tex. R. App. P. 47.4.

part from McCain's wavering, he contends that the trial court violated his right to be assisted by counsel, that the trial court violated article 1.051(e) of the code of criminal procedure by not giving his appointed (but later discharged) counsel ten days to prepare for trial, that he sustained a violation of his constitutional right to a speedy trial, and that the trial court abused its discretion by denying his pretrial motion for a bond reduction. We reject these arguments and affirm the trial court's judgment.

## Background[2]

In March 2016, a grand jury indicted McCain with aggravated assault. In the indictment, the State alleged that he had caused serious bodily injury to Lacy—a member of his household or a person with whom he had a dating relationship—by striking her with his hand. The State also alleged that during the assault, McCain had used his hand as a deadly weapon.

Through his initial appointed counsel, Andrew Turner, McCain filed a motion for the trial court to reduce his $100,000 bond to $5,000. McCain alleged that he was indigent. Following an off-the-record hearing, the trial court reduced his bond to $75,000, but he remained confined.

---

[2]Because McCain does not challenge the sufficiency of the evidence to prove his guilt, we will not detail the facts leading to his conviction. In sum, according to L.F. (whom we will refer to as Lacy), after she told McCain that she wanted to end her dating relationship with him, he pushed her and punched her face several times, causing a black eye, broken bones in her mouth, and the loss of some of her teeth. Lacy spent three days in the hospital, and her injuries required surgery and stiches.

Turner was the first of many attorneys appointed by the trial court to represent McCain. In June 2016, Turner filed a motion to withdraw on the ground of a conflict with McCain that precluded effective representation. He informed the trial court that McCain had "indicated a strong desire that [Turner] withdraw from the case immediately." The trial court allowed Turner to withdraw.

The trial court appointed Andrew Lloyd to represent McCain in June 2016. Lloyd filed one document but did not otherwise appear on McCain's behalf. In August 2016, the trial court substituted Josh Healy as McCain's counsel.[3] Healy filed several motions on McCain's behalf, including a motion for the appointment of an investigator, which the trial court granted. Healy appeared with McCain at an October 2016 hearing, and McCain told the trial court that he wanted Healy to "be removed off [his] case." The trial court denied that request and told McCain,

> I need you to understand something. You have had several attorneys now. The last time I let a lawyer off your case, I told you this is it. Now we're back right in the same boat. So what I want you to understand is this: The problem is not the attorneys, it's you. It's your attitude. . . .
>
> And the fact that you have now had several different attorneys representing you, all of which you have had personality conflicts with, all of which have, prior to Mr. Healy, withdrawn because you cannot take their advice, you cannot listen to them, you cannot follow their guidance, means that the problem is with you. And it is not going to be a problem for me. We are going to press forward

---

[3]The record also contains an August 2016 document naming Michael Crowder as McCain's counsel, but the court replaced Crowder with Healy because Crowder was "not on the Felony A List." According to a statement that McCain made in the trial court, Lloyd was "mysteriously taken off [his] case"; McCain averred that he did not ask for Lloyd's withdrawal.

3

and this case will play out however it plays out. . . . You have competent counsel.

At the same hearing, the trial court told McCain that he could represent himself but that he would be an "idiot" and a "fool" if he did so. The court said, "[N]o one can competently represent themselves before a jury. It is foolish to expect that you would." McCain responded by reiterating that he wanted Healy "off [his] case." The trial court found that McCain was not competent to represent himself and, at that time, declined to discharge Healy.

In November 2016, Healy filed a motion to withdraw; like Turner, Healy informed the trial court that McCain wanted a different attorney and that a conflict prevented effective communication with McCain. In an affidavit that Healy filed, he stated that McCain was argumentative, characterized his meetings with McCain as "adventure[s]," and informed the trial court that McCain had repeatedly expressed that he wanted to represent himself. The trial court held another hearing that month, at which the court again denied McCain's requests to discharge Healy and to represent himself. The court said,

> He can't represent himself. After sitting down in the last week and reviewing the legal standard, he is not competent to represent himself. He's gonna piss a jury off just like he has pissed everybody else off. He can't focus on the relevant issues. . . . So I simply can't make findings that he is competent to represent himself[;] it will never hold up.

In December 2016, the trial court discharged Healy and substituted Alan Wheeler as McCain's counsel. Wheeler filed several motions for McCain, including another motion for the trial court to reduce his bond. Wheeler also filed

4

a motion for continuance in January 2017, asserting that he needed more time to prepare for the January 23, 2017 trial. At the hearing on the motion for continuance, McCain asked to represent himself. The court again denied that request, stating,

> I've had you in court a dozen times and you have demonstrated to me -- in order to represent yourself and to intelligently waive counsel, *you have to demonstrate that you essentially know what you're doing, that you can represent yourself.* You have demonstrated to me exactly the opposite of that, that you not only don't know what you're doing, but that you are going to create bigger problems for yourself.
>
>     . . . .
>
>     . . . [B]ased on the motions that I have seen, *I do not have confidence that [you are] capable of representing [yourself] competently or effectively.* But I certainly have not gone through the process to make that formal finding, so I will do that at a later time if requested to. [Emphases added.]

The trial court granted a continuance.

On January 13, 2017, through Wheeler, McCain filed a motion asking the trial court to allow self-representation. In the motion, he "unequivocally waive[d] his right to be represented by a lawyer." A week later, the trial court held a hearing on the motion.

At the hearing, Wheeler opined that McCain was "entitled to represent himself as long as he listen[ed] to the admonishments from the Court and still want[ed] to do it." Wheeler also represented that McCain was mentally competent to represent himself. Wheeler said that McCain was "knowingly, intelligently and voluntarily waiving his right to counsel and wanting to represent

5

himself." The trial court admonished McCain about the perils of self-representation, telling him that he would be at a "serious disadvantage." The court asked him about his education (he is a junior college graduate) and about his experience or knowledge with respect to jury trials and evidentiary rules (he had little). The court told him that if he represented himself, the court would not be able to assist him. The court then found that McCain was not intelligently, knowingly, and voluntarily waiving counsel because he was "wholly unfamiliar with the law . . . and the rules that would be applicable to him at trial." The court declined to discharge Wheeler.

The next month, in February 2017, the trial court held another hearing on McCain's request to represent himself. The court told McCain that he would be "a complete fool to represent [himself] at trial" and that he would be expected to pick a jury, introduce evidence, and question witnesses. The court told McCain that representing himself would be a "bad idea." McCain persisted in his desire to represent himself, so the trial court signed an order discharging Wheeler and finding that McCain had "unequivocally, intelligently[,] and knowingly waived his right to counsel." The court told McCain,

> I can't impress upon you how stupid you are to waive the right to good legal counsel and represent yourself because you do not know what you're doing. And, unfortunately, the law says if you want to be a fool, you can be a fool. That's essentially what I'm convinced the law says. So if you want to be a fool, you can be a fool. It doesn't mean it is not intelligent, knowing[,] and voluntary under the way that it is described in the case law, so I'm going to let you go ahead and do it.

6

While proceeding pro se, McCain filed several handwritten pretrial motions, including a motion for the State to produce exculpatory and mitigating evidence; a motion to set aside the indictment; a motion to allow for additional motions; a motion for a bond reduction; a motion for funds for (another) appointment of an investigator;[4] a motion for the trial court to reassign his case to another court;[5] a motion for the State to disclose any agreement that it had with the victim or with the State's witnesses; and in both March 2017 and June 2017, a motion for the trial court to dismiss the indictment because of an alleged violation of his constitutional right to a speedy trial.

At a March 2017 hearing, McCain told the trial court that he was not ready for trial. In April 2017, McCain filed a motion for continuance, asserting that he needed more time to prepare for an April 17, 2017 trial date. The trial court held a hearing on the motion for continuance and granted it. On the record, McCain expressly waived his prior request for a speedy trial. At the same hearing, the trial court denied McCain's motion to reduce his $75,000 bond after admitting into

---

[4]The trial court denied this motion. Appellant appealed the denial of the motion, and we dismissed the appeal for want of jurisdiction. *See McCain v. State*, No. 02-17-00091-CR, 2017 WL 2687840, at *1 (Tex. App.—Fort Worth June 22, 2017, no pet.) (mem. op., not designated for publication).

[5]The trial court requested the assignment of another judge to hear this motion. The Honorable David L. Evans, presiding over the eighth administrative judicial region, denied the motion to reassign. McCain then filed a motion to recuse the trial judge. Judge Evans denied the motion to recuse and denied a subsequent request for recusal. Another judge later denied another recusal motion.

7

evidence an arrest-warrant affidavit that described the facts of his offense and after McCain declined to present evidence supporting the motion.[6]  The court found that the bond amount was reasonable.  The court also heard and denied McCain's motion to set aside his indictment.

At a hearing on June 16, 2017—the Friday before the June 19, 2017 trial date—McCain asked the trial court to appoint new counsel.  He told the court that he had "never really wanted" to represent himself but had only wanted counsel who would represent him "the right way."  The court granted McCain's request and appointed Hank Paine and Ed Nolter to represent him.

On June 19, 2017, before the trial began, McCain asked the court for a ten-day continuance so that his new counsel could prepare for trial.  When the court denied the continuance, McCain told the court that it could "take [counsel] off [his] case."  The following exchange occurred:

> THE DEFENDANT:  I'll proceed representing myself, sir.
>
> . . . .
>
> THE COURT:  So you do not wish to be represented by Mr. Paine or Mr. Nolter?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  And just to be clear, you understand the Court is not going to change its mind during trial, if you change your mind again, and try to drag them back down here?
>
> THE DEFENDANT:  Yes, sir.

---

[6]During the hearing, the State informed the trial court that McCain was serving a five-year sentence on a different offense.

8

THE COURT: You understand that all of the limitations, the disadvantages that I have previously discussed with you with respect to representing yourself are still gonna apply. That is, I've made it crystal clear to you that I think it's a bad idea and you are going to be in a poor position to represent yourself effectively at trial. However, you have the absolute right to do so. And if you persist in expressing your desire to represent yourself, I have to let you. Doesn't mean I think it's a good idea, but you will be permitted to do so. You understand that?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: . . . Bottom line is, you are ill-equipped to represent yourself and I think it is extremely foolish. I think it would be virtually guaranteeing a worse result for you at trial than having the benefit of counsel.

. . . .

. . . [E]ven without the benefit of advance opportunity to prepare the way they may want to prepare, these experienced lawyers have a much better understanding of how a trial works, the rules of evidence and procedure, and the ability to effectively represent your interests than you have the ability to represent your own without their experience and their education and their training. I simply want a final answer.

. . . .

THE DEFENDANT: I wish to represent myself, sir.

Representing himself again, McCain pleaded not guilty. During the trial, McCain again asked for counsel, and the trial court denied the request. After hearing the parties' evidence and arguments in the guilt-innocence and

9

punishment phases of the trial,[7] the jury found McCain guilty of aggravated assault as charged in the indictment and assessed sixty years' confinement. The trial court sentenced him accordingly, and he brought this appeal. The trial court found that he was indigent and appointed counsel to represent him on appeal.

## Self-Representation

In his first issue, McCain presents two alternative arguments: (1) the trial court erred by allowing his self-representation because he did not competently and intelligently waive his right to counsel; and (2) if he did competently and intelligently waive his right to counsel, the trial court erred by not appointing standby counsel and by not appointing counsel upon his request at trial. The State argues that McCain competently waived his right to counsel because he "persisted in wanting to represent himself after being warned about the disadvantages of self-representation . . . on numerous occasions." The State also contends that McCain had no right to standby counsel and that the trial court did not err by declining to appoint counsel after trial began.

The United States Constitution guarantees a defendant the right to assistance of counsel, but it also affords a defendant who validly waives that right the right to represent himself.[8]  *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex.

---

[7]McCain did not question the veniremembers during voir dire. He made opening and closing statements and cross-examined some of the State's witnesses, but he did not testify or call his own witnesses.

[8]In his briefing on this issue, McCain relies on federal constitutional and state constitutional and statutory provisions, but he does not argue that federal

10

Crim. App. 2011); *Lathem v. State*, 514 S.W.3d 796, 802 & n.9 (Tex. App.—Fort Worth 2017, no pet.). A waiver of counsel is valid if it is made knowingly, intelligently, and voluntarily. *Cofer v. State*, No. 02-16-00101-CR, 2017 WL 3821885, at *2 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op., not designated for publication) (citing *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975)). Such a waiver is knowing and intelligent if it is made with a "full understanding of the right to counsel being abandoned, as well as the dangers and disadvantages of self-representation"; the waiver is voluntary if it is not coerced. *Id.* (citing *Faretta*, 422 U.S. at 835–36, 95 S. Ct. at 2541); *see Lathem*, 514 S.W.3d at 803 ("Once a defendant asserts his right of self-representation, to ensure that this decision is constitutionally effective, a trial court is obligated to advise the accused of the dangers and disadvantages of self-representation."). As we explained in *Cofer*,

> A trial court need follow no formulaic questioning or particular script in ascertaining the knowing and voluntary nature of a defendant's waiver of counsel. However, if such factors are not otherwise apparent from the record, a trial court's inquiry regarding the defendant's waiver of counsel should center on his background, age, experience, and education. The defendant should be aware that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights.

*Cofer*, 2017 WL 3821885, at *2 (citations omitted). The trial court's inquiry is not whether the defendant has the skill and experience necessary to represent

---

and state law create different standards by which we should review the issue, so we will engage in a combined analysis of his federal and state complaints.

11

himself effectively; rather, it is whether the defendant is aware of the disadvantages of misrepresentation and makes the choice to represent himself with "eyes open." *See Lathem*, 514 S.W.3d at 803–04. We review the trial court's decision to allow for self-representation for an abuse of discretion. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010).

The record, as detailed above, shows that the trial court ensured that McCain made his choice of self-representation with eyes open. On several occasions, the trial court, through direct and explicit language, told McCain about the perils of self-representation, including that he would be required to follow technical rules without the court's assistance. On the final occasion in which McCain chose self-representation, the trial court reminded McCain of those perils and articulated why McCain would fare better with counsel:

> You understand that all of the limitations, the disadvantages that I have previously discussed with you with respect to representing yourself are still gonna apply. That is, I've made it crystal clear to you that I think it's a bad idea and you are going to be in a poor position to represent yourself effectively at trial. However, you have the absolute right to do so.
>
> . . . .
>
> . . . Picking a jury in this case, do you have the first idea how you are gonna go about picking a jury? What you are going to ask the jury? What questions you may have for them?
>
> . . . .
>
> Well, these attorneys would [know how to pick a jury]. These attorneys know the rules of evidence and procedure. And even with no notice whatsoever, walking in here cold, they have a much better

12

opportunity to represent you than you have to represent yourself, period. There is no question about that.

. . . .

. . . And even talking to you four or five months ago about needing to sit down and review the Rules of Evidence, needing to sit down and review the Code of Criminal Procedure, needing to sit down and figure out how one goes about selecting a jury, how many strikes -- let me give you an example. How many strikes do you get? How many names of jurors do you get to strike from the list that we will give you? Do you know?

THE DEFENDANT: No, sir.

THE COURT: See, and it is not my job to tell you. That's the kind of thing that you are supposed to know. Bottom line is, you are ill-equipped to represent yourself and I think it is extremely foolish. I think it would be virtually guaranteeing a worse result for you at trial than having the benefit of counsel.

At a prior hearing, the court also inquired about McCain's experience and education. Further, the trial court could have justifiably relied on the observations of Wheeler, McCain's former appointed counsel, who opined that McCain was "absolutely competent" in his choice of self-representation and that McCain was making the choice to represent himself "knowingly, intelligently[,] and voluntarily." Although McCain relies on the trial court's initial rulings denying self-representation, the record, as detailed above, indicates that the trial court mistakenly based those preliminary rulings on its opinion concerning whether McCain could represent himself effectively, not whether his choice to do so was competent, intelligent, and voluntary. *Cf. Godinez v. Moran*, 509 U.S. 389, 399, 113 S. Ct. 2680, 2687 (1993) (explaining that the "competence that is required of

a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself"); *Alexander v. State*, No. 02-15-00033-CR, 2016 WL 2586602, at \*3 (Tex. App.—Fort Worth May 5, 2016, pet. ref'd) (mem. op., not designated for publication) (stating that an assessment of the accused's technical legal knowledge "is not relevant to a court's analysis of whether a defendant knowingly and intelligently exercised his right to defend himself").

In sum, we conclude that the record shows that McCain chose to represent himself with a full understanding of the right to counsel being abandoned, with knowledge of the disadvantages of self-representation, and without coercion. *See Cofer*, 2017 WL 3821885, at \*2. We therefore hold that his waiver of counsel and his choice to represent himself was knowing, intelligent, voluntary, and, therefore, valid. *Id.*

McCain alternatively argues that once the trial court permitted his self-representation, the trial court erred by not appointing standby counsel. A trial court may appoint standby counsel for a defendant who has waived his right to counsel, but the court need not do so, and the court's decision to not appoint standby counsel is not reversible error. *See Burgess v. State*, 816 S.W.2d 424, 428 n.1 (Tex. Crim. App. 1991); *Fulbright v. State*, 41 S.W.3d 228, 235 (Tex. App.—Fort Worth 2001, pet. ref'd).

Finally, McCain contends that after he waived the assistance of his last appointed counsel and made his final choice to represent himself, the trial court

erred by not appointing counsel when he asked for counsel just before voir dire began. We cannot agree. The right to counsel may not be manipulated to obstruct the judicial process or to interfere with the administration of justice. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *see Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet. ref'd) (op. on reh'g) (explaining that the "the defendant does not have the right to repeatedly alternate his position on the right to counsel and thereby delay trial or otherwise obstruct the orderly administration of justice").

On the final occasion that McCain waived counsel and chose to represent himself, the trial court informed him that it would not consider further requests to appoint counsel. After McCain made his request for counsel before voir dire began, the trial court stated that McCain's vacillations on whether he wanted counsel had already delayed the trial and that appointing new counsel would delay the trial further because the court did not "have lawyers that just [stood] around the courthouse waiting to be asked by a judge to come take three or four days out of their time to try a case." This comment indicates that Paine and Nolter were not immediately available to again be appointed as McCain's counsel. The court expressly found that McCain's late request for counsel was made in bad faith and for the purpose of manipulating the trial process. On our review of the record, we cannot conclude that this finding or the court's decision to not delay the proceedings to appoint new counsel constituted an abuse of

15

discretion.[9]  *See Davis v. State*, No. 09-15-00450-CR, 2017 WL 1953277, at *4 (Tex. App.—Beaumont May 10, 2017, no pet.) (mem. op., not designated for publication); *Glover v. State*, No. 09-06-00325-CR, 2007 WL 5442525, at *7 (Tex. App.—Beaumont Aug. 27, 2008, no pet.) (mem. op., not designated for publication).

For all of these reasons, we overrule McCain's first issue.

## Article 1.051

In his second issue, McCain asserts that the trial court violated article 1.051(e) of the code of criminal procedure by not giving Paine and Nolter, McCain's final appointed counsel, ten days to prepare for trial.  Article 1.051(e) states, "An appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court."  Tex. Code Crim. Proc. Ann. art. 1.051(e) (West Supp. 2017).  McCain argues that the trial court violated article 1.051(e) because Paine and Nolter did not have ten days to prepare for trial and did not waive the preparation time.

McCain does not, however, acknowledge the language in article 1.051(h) that states that when a defendant withdraws a waiver of the right to counsel, the

---

[9]McCain relies on *Medley* to contend that the trial court erred by not appointing counsel upon his request before voir dire.  *Medley* is distinguishable because the record there reflected that counsel who had represented Medley and who was acting as his standby counsel on the morning of trial was in the courtroom when Medley asked for counsel and that the appointment of counsel would not have caused delay.  *See* 47 S.W.3d at 25.

16

trial court has "discretion [to] provide the appointed counsel 10 days to prepare."

Tex. Code Crim. Proc. Ann. art. 1.051(h). Article 1.051(h) is an exception to

article 1.051(e)'s requirement of allowing for ten days' preparation for appointed

counsel. *Weatherly v. State*, No. 13-14-00192-CR, 2015 WL 4116672, at *2

(Tex. App.—Corpus Christi July 2, 2015, no pet.) (mem. op., not designated for

publication); *Barnes v. State*, 921 S.W.2d 881, 884 (Tex. App.—Austin 1996, pet.

ref'd) (explaining that under article 1.051(h), the trial court's "discretion to provide

the ten-day preparation period necessarily includes the discretion to refuse it").

Article 1.051(h) applies here because on the Friday before the Monday

trial, McCain withdrew his waiver of the right to counsel. *See* Tex. Code Crim.

Proc. Ann. art. 1.051(h). Given the circumstances of their appointments, Paine

and Nolter were not entitled to ten days to prepare for trial under article

1.051(e).[10] *See id.*; *Barnes*, 921 S.W.2d at 884. We conclude that the trial court

did not err by denying McCain's request for a continuance so that his counsel

could have more time to prepare for trial, and we overrule his second issue.

### Speedy Trial

In McCain's third issue, he contends that the trial court denied his right to a

speedy trial. Federal and state constitutional provisions, along with the code of

---

[10]Again, McCain relies only on article 1.051(e); he does not argue that the trial court's decision to not allow his counsel more time to prepare for trial was an abuse of the trial court's discretion under article 1.051(h). Even if that were McCain's argument, we cannot conclude that the trial court abused its discretion under the circumstances described above.

17

criminal procedure, guarantee defendants the right to a speedy trial. *See* U.S. Const. amend VI; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005). We analyze a speedy-trial complaint on an ad hoc basis by applying the balancing test established in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S. Ct. 2182, 2192–93 (1972). *See Zamorano v. State*, 84 S.W.3d 643, 647–48 (Tex. Crim. App. 2002) (stating that a speedy-trial claim under the Texas constitution is analyzed under the *Barker* factors).

The *Barker* test requires us to weigh the strength of each of the following factors and to balance their relative weight in light of the conduct of the prosecution and the appellant: (1) the length of the delay, (2) the reason for the delay, (3) the circumstances surrounding the appellant's assertion of his speedy-trial right, and (4) the prejudice suffered by the appellant. *Zamorano*, 84 S.W.3d at 647–48; *Murphy v. State*, 280 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd). As we explained in *Murphy*,

> While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay. Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial.
>
> . . . Once the *Barker* test is triggered, courts must analyze the speedy trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." No one factor is either a necessary or sufficient condition to the finding of a deprivation of the speedy trial right. Instead, the four factors are

18

related and must be considered together along with any other relevant circumstances. . . .

Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's speedy trial right was actually violated. . . . [C]ourts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. The constitutional right is that of a speedy trial, not dismissal of the charges.

280 S.W.3d at 450–51 (citations omitted). We review a trial court's ruling on a speedy-trial claim under a bifurcated standard: we use an abuse-of-discretion review for a trial court's factual determinations, and we review the court's legal conclusions de novo. *Id.* at 452.

The grand jury indicted McCain in March 2016, and his trial did not occur until June 2017, a period of fifteen months. The State concedes on appeal that the fifteen-month delay is sufficient to trigger our analysis of the other *Barker* factors. *See* 407 U.S. at 530, 92 S. Ct. at 2192 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

Regarding the reason for the delay, the record does not provide a concrete explanation for the entire period between the March 2016 indictment and November 2016. But the record shows that McCain changed appointed counsel several times during that period, including Turner's withdrawal on the basis of a conflict between the two. The trial court expressly attributed delays in the

19

proceedings to the changes of counsel and to McCain's unmeritorious pro se motions,[11] and we cannot conclude that the trial court's findings in that regard were an abuse of discretion.[12] *Cf. Brown v. State*, No. 05-97-00289-CR, 1999 WL 61858, at *9 (Tex. App.—Dallas Feb. 9, 1999, no pet.) (not designated for publication) ("The record reflects that the reasons for the delay in this case were either neutral or attributable to Brown's inability to work with numerous attorneys and his ultimate decision to represent himself.").

Also, the record shows that the changes to McCain's appointed counsel (caused in part by his inability to work with them as detailed above) or his decision to represent himself contributed to delays from November 2016, when Healy filed his motion to withdraw as counsel, until the trial in June 2017. When the trial court appointed Wheeler to replace Healy in December 2016, the court had set a trial date for January 23, 2017. But McCain sought a continuance of

---

[11]In an October 2016 hearing, the trial court said that it was trying to "push this case forward" but that McCain was "wast[ing] time" through conflicts with appointed counsel. Later, in another pretrial hearing, the trial court stated,

> I specifically find that there have been many delays in this case, but all of them have been caused, either directly or indirectly, by Mr. McCain through formal motions for continuance or informally through the repeated filing of motions that are either repetitive or cumulative of other motions that have been filed or motions to challenge this court's ability to preside over the proceedings. In short, the motion to dismiss for Speedy Trial Act violations is denied.

[12]For example, the record shows that McCain first filed a motion for the appointment of an investigator along with a motion for discovery on September 30, 2016. The trial court could have reasonably concluded that with continuity of McCain's counsel, such motions could have been litigated earlier in the process.

20

that trial date because Wheeler needed more time to prepare for trial. The court reset the trial for April 2017, but McCain told the trial court that he was not ready for trial and requested more time. In doing so, he waived his past request for a speedy trial. In part, he requested the continuance because he had filed a civil lawsuit against the trial judge. When the trial court reset the April 2017 trial date to June 2017 on McCain's request, the court stated on the record that June 2017 was the closest time on the court's calendar that the case could be tried.

We conclude, therefore, that the record reflects McCain's primary responsibility for the delay, which weighs against his assertion of a violation of his right to a speedy trial. *See Murphy*, 280 S.W.3d at 450; *see also Smith v. State*, 436 S.W.3d 353, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (explaining that when a defendant "continually acquiesced in resetting his case for trial," his actions were "inconsistent with a demand for speedy trial").

Next, the circumstances surrounding McCain's request for a speedy trial weigh against him. *See id.* McCain first filed a motion to dismiss for an alleged violation of his right to a speedy trial in March 2017, but as explained above, that was after he sought a continuance because Wheeler needed more time to prepare for trial. He filed another motion to dismiss in June 2017, but that was after he had asked for a continuance of the April 2017 trial date and only days before the trial, indicating that his primary motivation at that time was dismissing the trial, not participating in it. *Cf. Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.) ("Appellant's request for a dismissal instead of a

21

speedy trial weakens his claim because it shows a desire to have no trial instead of a speedy trial."). We conclude that McCain's late requests for a speedy trial weigh against him. *See Murphy*, 280 S.W.3d at 450.

Finally, concerning prejudice, McCain relies on unsworn statements in his motions to dismiss to contend that he lost witnesses who were at one time available but were unavailable at trial, that he felt oppressed by the lack of a speedy trial, and that the slow pace of the proceedings made him uneasy and doubtful about the future. But McCain does not direct us to any evidence supporting these allegations. *Cf. Mitchell v. State*, No. 06-00-00055-CR, 2001 WL 1338058, at *6 (Tex. App.—Texarkana Nov. 1, 2001, pet. dism'd) (not designated for publication) ("In his motion for a speedy trial, Mitchell claimed prejudice from the delay due to witnesses who could no longer be located or whose memory would be impaired due to the lapse of time and that certain tangible evidence favorable to him would be lost or destroyed. However, there is nothing in the record to substantiate these claims . . . ."). McCain also relies on his lengthy pretrial confinement as evidence of prejudice. But as the State argues, the record shows that in October 2016, McCain was sentenced to five years' confinement in another case, indicating that he would have remained confined in any event.[13] *Cf. Vadnais v. State*, No. 03-14-00578-CR, 2017 WL

---

[13]McCain appealed his conviction leading to the five-year sentence, and we affirmed the conviction. *See McCain v. State*, No. 02-16-00446-CR, 2018 WL 359803, at *4 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication).

474059, at *4 (Tex. App.—Austin Jan. 31, 2017, pet. ref'd) (mem. op., not designated for publication) ("Vadnais cannot demonstrate prejudice based on 'oppressive pretrial incarceration' because during most of the nine-month delay he was incarcerated for his conviction on an unrelated felony offense.").

Considering the *Barker* factors, we conclude that the trial court did not err by denying McCain's request for dismissal because of an alleged violation of his right to a speedy trial. *See Barker*, 407 U.S. at 530–33, 92 S. Ct. at 2192–93; *Zamorano*, 84 S.W.3d at 647–48. We overrule his third issue.

### Denial of Pretrial Motions to Reduce Bond

Finally, in his fourth issue, McCain contends that the trial court abused its discretion by denying his motions to reduce his $75,000 bond. "Issues concerning pretrial bail are moot after the accused is convicted." *Myres v. State*, 866 S.W.2d 673, 673 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). Thus, because McCain's argument about the alleged excessiveness of his pretrial bond amount is moot, we overrule his fourth issue. *See id.*; *see also Serrano v. State*, No. 03-14-00516-CR, 2015 WL 6835463, at *6 (Tex. App.—Austin Nov. 6, 2015, no pet.) (mem. op., not designated for publication) ("To the extent that Serrano is challenging on appeal the amount of his bail, any dispute . . . became moot after Serrano was convicted.").

**Conclusion**

Having overruled all of McCain's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell
WADE BIRDWELL
JUSTICE

PANEL:  WALKER, KERR, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 21, 2018

24