

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00259-CR

———————————————————

STEPHEN JEROME HUNT, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1687726

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Stephen Jerome Hunt appeals his conviction for assault causing bodily injury to a family member while having a prior conviction. Raising four points on appeal, Hunt argues that the trial court reversibly erred by (1) including in the jury charge the Texas Family Code definition of "family violence," (2) failing to tailor the jury-charge definitions of "intentionally" and "knowingly" to his charged offense's conduct element and instead including the full Texas Penal Code definitions, (3) admitting certain extraneous-offense evidence pursuant to Article 38.371 of the Texas Code of Criminal Procedure, and (4) denying his motion to dismiss based on the purported infringement of his constitutional right to a speedy trial. We will affirm.

## I. BACKGROUND

Hunt and the complainant met at work. After a short acquaintance, they began a romantic relationship, and Hunt quickly moved in with the complainant and her children. The complainant and Hunt have one child together.

Throughout their roughly three-year relationship, Hunt and the complainant often argued about bills and accusations that one of them had been unfaithful to the other. These arguments often became physical, with Hunt doing things like punching the complainant or pulling her hair.

On October 15, 2020, Arlington Police Officer Hoai Nguyen was dispatched to the complainant's apartment on a domestic-assault call. When he arrived, he saw a woman—later identified as the complainant—sitting on the stairs holding a blood-

2

soaked towel. Her face was swollen; her eyes were bruised; her nose was bleeding; and her shirt was covered in blood. After questioning the complainant, Officer Nguyen learned that Hunt had taken her vehicle without permission and had driven away from the scene. Officer Nguyen then reported the vehicle as stolen, took pictures of the complainant's injuries, had her complete a family-violence packet, and coordinated with other officers to attempt to locate Hunt.

Ultimately, Hunt was indicted for assault causing bodily injury to a family member while having a prior conviction.[1] *See* Tex. Penal Code Ann. § 22.01(b)(2)(A). He pleaded not guilty, and a jury trial was held in September 2023. At trial, the State introduced evidence of three other instances (collectively, the Prior Incidents)[2] in which law enforcement had responded to domestic-disturbance calls involving Hunt and the complainant. The jury convicted Hunt and assessed his punishment at ten years' incarceration; the trial court sentenced him accordingly. This appeal followed.[3]

---

[1]The indictment included a state-of-disaster enhancement, but the State waived it. *See* Tex. Penal Code Ann. § 12.50.

[2]The Prior Incidents, which involved acts of violence similar to those alleged in the indictment, occurred in November 2019, March 2020, and September 2020.

[3]Hunt also filed a motion for new trial, which was denied by operation of law. *See* Tex. R. App. P. 21.8(c).

## II. Discussion

### A. Charge Error

In his first two points, Hunt complains about the guilt–innocence jury charge. Specifically, he contends that the charge was erroneous because it included (1) the Texas Family Code definition of "family violence" and (2) the full Texas Penal Code definitions of "intentionally" and "knowingly" instead of definitions tailored to his charged offense's conduct element. The State concedes that the complained-of definitions were erroneous but argues that the errors did not cause sufficient harm to warrant reversal. We agree with the State.

#### 1. Standard of Review and Applicable Law

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). "Preservation of charge error does not become an issue until we assess harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* "Under *Almanza* [*v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)], jury charge error requires reversal when the defendant has properly objected to the charge and we find 'some harm' to his rights." *Id.* "When the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* at 743–44. "Thus, we review alleged charge error by considering two questions: (1) whether error existed in

4

the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Id.* at 744.

When assessing whether the error was sufficiently harmful to require reversal, we consider (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Almanza*, 686 S.W.2d at 171); *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). Neither party bears the burden to show harm. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

### 2. Definition of "Family Violence"

The jury charge defined family violence as

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

This definition tracks the one set forth in the Texas Family Code. *See* Tex. Fam. Code Ann. § 71.004(1). Because the Penal Code section applicable to Hunt's charged offense neither includes nor incorporates the Family Code's definition, *see* Tex. Penal Code Ann. § 22.01(b)(2)(A), it should not have been included in the jury charge, *see*

5

*Morgan v. State*, Nos. 10-10-00367-CR, 10-10-00371-CR, 2011 WL 4837721, at *7 (Tex. App.—Waco Oct. 12, 2011, no pet.) (mem. op., not designated for publication).

Having concluded that the definition's inclusion was erroneous, we must determine whether sufficient harm resulted from the error to warrant reversal. *See Ngo*, 175 S.W.3d at 744. Because Hunt preserved the error by objecting to the charge, reversal is required if the error caused him "some harm," that is, if it was "calculated to injure" his rights. *See id.* at 743; *Almanza*, 686 S.W.2d at 172. But based on our review of the record, we conclude that the error was not sufficiently harmful to require reversal.

Hunt contends that the inclusion of the Family Code's broad definition of family violence harmed him because it "could have reduced the State's burden of proof and obscured the actual elements the State had to prove." According to Hunt, because the family-violence definition encompasses "a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault," the jury conceivably could have convicted him even if it found that he had merely engaged in "verbal, loud arguing over cheating or bills." But the charge's application paragraph, the state of the evidence, and the parties' arguments strongly militate against any potential confusion on the jury's part regarding the offense's elements or the State's burden of proof. *See Campbell*, 664 S.W.3d at 245.

6

The complained-of family-violence definition was not referenced in, or otherwise connected to, the charge's application paragraph, which instructed the jury to convict Hunt of the charged offense if it found

> from the evidence beyond a reasonable doubt that [Hunt], on or about the 15th day of October, 2020, . . . did intentionally or knowingly cause bodily injury to [the complainant], a member of [his] family or household or with whom [he] had a dating relationship, by striking her with his fist, and/or grabbing her with his hands and/or throwing her to the ground, and . . . further [found] that prior to the commission of the offense set out above [Hunt] had been previously convicted of an assault with bodily injury against a member of [his] household or with whom [he] had a dating relationship.

Thus, the charge clearly and accurately instructed the jury regarding (1) the statutory elements of the offense as modified by the charging instrument[4] and (2) the State's burden to prove these elements. The application paragraph's clear instructions undermine Hunt's argument that the family-violence definition might have confused the jury regarding what the State needed to prove to obtain a conviction. *Cf. id.* at 248 (holding that the jury charge as a whole suggested that the appellant had suffered no actual harm from the trial court's failure to limit the definitions of culpable mental states "because the application section of the charge helped to ameliorate any error within the abstract portion").

The state of the evidence and the parties' arguments also weigh against harm. The State presented evidence showing that Hunt had physically assaulted—not merely

---

[4]We note that the indictment does not mention the term family violence.

threatened—the complainant. Further, during its closing argument, the State only referenced the term family violence twice—once while generally discussing domestic disturbances and once in the context of discussing Hunt's prior conviction for assaulting a family member—and did not reference the charge's definition at all. And while one of Hunt's attorneys referenced the family-violence definition during her closing argument, she did so only to emphasize that it did not include defensive measures.

In sum, having considered the entire charge, the state of the evidence, and the parties' arguments, we cannot conclude that the erroneous inclusion of the Family Code's definition of family violence caused Hunt sufficient harm to warrant reversal. Accordingly, we overrule Hunt's first point.

### 3. Definitions of "Intentionally" and "Knowingly"

In his second point, Hunt contends that the charge was erroneous because it did not tailor the definitions of "intentionally" and "knowingly" to his offense's conduct element and instead included the full Texas Penal Code definitions. As noted, the State concedes the error but argues that it was not sufficiently harmful to warrant reversal, and we agree.

The Texas Penal Code defines four separate culpable mental states, including intentionally and knowingly. *See* Tex. Penal Code Ann. § 6.03. "[T]he scope of those culpable mental states is limited by the type of offense," which depends on the "conduct element." *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). There

are three such conduct elements: (1) nature of conduct, (2) result of conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). "If the gravamen of an offense is the result of conduct, the jury charge on culpable mental state should be tailored to the result of conduct and likewise for nature-of-conduct offenses." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). Assault causing bodily injury is a result-of-conduct offense. *See id.* at 442–43.

Assuming that the charge was erroneous for failing to tailor the definitions of intentionally and knowingly to the result-of-conduct offense at issue, we must determine whether the error caused Hunt sufficient harm to require reversal. Because Hunt did not preserve the error by objecting to the culpable-mental-state definitions, we will reverse only if the record shows that he suffered egregious harm. *See Ngo*, 175 S.W.3d at 743–44.

The egregious-harm standard is difficult to meet and requires a showing that the appellant was deprived of a fair and impartial trial. *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas v. State*, 398 S.W.3d 703, 708–710 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that

9

result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Cosio*, 353 S.W.3d at 777 (citing *Ngo*, 175 S.W.3d at 750).

Here, the record does not show egregious harm.[5] The charge's application paragraph clearly instructed the jury to find Hunt guilty only if it found beyond a

---

[5]In his briefing, Hunt failed to explain how, if at all, the trial court's inclusion of the full statutory definitions of intentionally and knowingly—when viewed in the context of the entire record—could have caused reversible harm. Rather, he simply stated in conclusory fashion that he "suffered egregious harm from the [inclusion of the] full statutory nature[-]of[-]conduct definitions of intentionally and knowingly." By failing to address this essential issue, Hunt arguably waived his second point due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding that appellant had forfeited issues due to inadequate briefing by, inter alia, failing to "address the question of whether the alleged error . . . was harmless"); *Thomas v. State*, No. 06-21-00138-CR, 2022 WL 3048223, at *9 (Tex. App.—Texarkana Aug. 3, 2022, no pet.) (mem. op., not designated for publication) (citing *Cardenas* and holding that appellant had forfeited his charge-error complaint because "he provided no harm analysis other than a conclusory statement that the harm was egregious"); *Yepez v. State*, No. 01-22-00049-CR, 2022 WL 18163472, at *7 (Tex. App.—Houston [1st Dist.] Jan. 10, 2022, no pet.) (holding that appellant had waived charge-error complaint "by inadequately briefing the issue of harm"). Nevertheless, in our discretion, we address the merits of Hunt's second point. *See Zermeno v. State*, No. 14-19-00789-CR, 2021 WL 4472528, at *3 n.4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op., not designated for publication) (exercising discretion to address issue on the merits despite appellant's inadequate briefing but admonishing that failure to comply with briefing requirements "usually results in the waiver of an issue").

10

reasonable doubt that he "did intentionally or knowingly cause bodily injury" to the complainant. Because the terms intentionally and knowingly directly modify the phrase "cause bodily injury," it is obvious that the relevant portion of the culpable-mental-state definitions is the result-of-conduct language. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) (holding that "no harm resulted from the court's failure to limit the definitions of culpable mental states to proving the conduct element of the underlying offense" because the context in which the mental-state definitions appeared in the application paragraph made it obvious which portions of the definitions were relevant); *see also Campbell*, 664 S.W.3d at 248. Further, the parties' arguments at trial focused on the complainant's and her children's credibility; there was no debate about whether Hunt acted with the relevant mens rea. Thus, we cannot conclude that Hunt suffered any actual harm—much less egregious harm—from the trial court's failure to appropriately tailor the definitions of the culpable mental states.

Accordingly, we overrule Hunt's second point.

## B. Extraneous-Offense Evidence

In his third point, Hunt contends that the trial court abused its discretion by admitting evidence regarding the Prior Incidents under Texas Code of Criminal Procedure Article 38.371(b). Specifically, Hunt asserts that the trial court erred by admitting this extraneous-offense evidence because its probative value was

substantially outweighed by a danger of unfair prejudice.[6] *See* Tex. R. Evid. 403. We disagree.

### 1. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is

---

[6]At one point in his briefing, Hunt suggests that the extraneous-offense evidence had been offered "to prove character propensity for violence and conformance with that character" in violation of Rule 404(b). *See* Tex. R. Evid. 404(b). But Hunt did not object to this evidence on Rule 404(b) grounds at trial and thus has forfeited any such complaint. *See* Tex. R. App. P. 33.1(a); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). Further, even if Hunt had preserved such a Rule 404(b) complaint, we would overrule it on the merits. The record shows that the extraneous-offense evidence was admitted for the purpose contemplated by Article 38.371: to establish the nature of the relationship between Hunt and the complainant. *See* Tex. Code Crim. Proc. art. 38.371(b). Indeed, the charge instructed the jury that the extraneous-offense evidence could be considered only in connection with determining Hunt's and the complainant's states of mind and the nature of their relationship and "for no other purpose." *Cf. Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *4 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (rejecting Rule 404(b) complaint regarding extraneous-offense evidence admitted under Article 38.371 because, inter alia, the trial court had issued limiting instructions to the jury explicitly directing them to consider the extraneous-offense evidence "only . . . in determining the nature of the . . . relationship of . . . [the complainant] and . . . [appellant] . . . and for no other purpose").

correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

### 2. Admissibility Under Rule 403

Otherwise admissible evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403; *see Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich*, 2019 WL 311153, at *7). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *Id.* at 547; *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### 3. Application

Applying these factors, we cannot say that the trial court abused its discretion by admitting the extraneous-offense evidence.

First, the evidence concerning the Prior Incidents, all of which occurred within a year of the charged offense and involved similar acts of violence, had substantial probative force because it gave the jury a more complete picture of the cycle of violence between Hunt and the complainant. *See James*, 623 S.W.3d at 547–48; *see also Hill v. State*, No. 11-13-00069-CR, 2015 WL 252316, at *7 (Tex. App.—Eastland Jan. 15, 2015, pet. ref'd) (mem. op., not designated for publication) ("As important

14

measures of probative force, we consider the closeness in time, the presence of similarities between the charged and the extraneous offense, and the strength of the evidence to prove the extraneous offense." (first citing *Montgomery*, 810 S.W.2d at 390; and then citing *Robinson v. State*, 701 S.W.2d 895, 898 (Tex. Crim. App. 1985) (op. on reh'g))). Further, because the complainant's credibility was at issue, the State had a legitimate need for the evidence of the Prior Incidents. *See James*, 623 S.W.3d at 548 (noting that "evidence of prior assaults and abuse makes it less likely that a complainant has fabricated the charged offenses" and concluding that the State had a strong need for extraneous-offense evidence because, among other things, the complainant's credibility was at issue). Thus, the extraneous-offense evidence had considerable probative value. *See Gigliobianco*, 210 S.W.3d at 641–42.

Hunt has failed to show that the evidence's probative value was substantially outweighed by the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. Because the Prior Incidents involved conduct similar in nature and seriousness to the charged offense, the danger of unfair prejudice is low.[7] *See Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at

---

[7]The Prior Incidents' nature and seriousness distinguish this case from *Upchurch v. State*, 656 S.W.3d 170 (Tex. App.—Fort Worth 2022, no pet.), a decision cited extensively in Hunt's brief. In *Upchurch*, the State presented graphic evidence of a prior incident in which the appellant had doused the complainant with gasoline and set her on fire, an act far more heinous than his charged offense, which involved striking her with his hand. *See id.* at 174–75. Because of the extraneous offense's heinousness and the evidence's graphic nature, we concluded that the danger of unfair

15

*5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice."); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one"). Further, because the evidence came through lay witnesses and was not scientific or technical in nature, there was little risk of the jury's giving it undue weight. *See Upchurch*, 656 S.W.3d at 181; *see also Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force").

Hunt rightly points out that the extraneous-offense evidence played a prominent part in the State's case and took up a significant portion of the trial. But given the other *Gigliobianco* factors discussed above and the trial court's instruction in the jury charge that the evidence could be considered only if the extraneous offenses were proved beyond a reasonable doubt and, even then, could be considered only in connection with determining Hunt's and the complainant's states of mind and the nature of their relationship,[8] we cannot conclude that that any tendency of the

---

prejudice "was as high as we can fathom." *Id.* at 182. But those factors are not present here.

[8]Absent evidence to the contrary, we must presume that the jury understood and followed the court's charge. *See Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim.

extraneous-offense evidence to confuse or distract the jury from the main issues in the case substantially outweighed its probative value, *see Gigliobianco*, 210 S.W.3d at 642, much less that the trial court's decision to admit this evidence was outside the zone of reasonable disagreement, *see Zuliani*, 97 S.W.3d at 595.

Accordingly, we overrule Hunt's third point.

## C. Constitutional Right to a Speedy Trial

In his fourth point, Hunt contends that the trial court erred by denying his motion to dismiss based on the purported infringement of his constitutional right to a speedy trial. We disagree.

### 1. Applicable Law and Standard of Review

The Sixth Amendment affords the accused in a criminal prosecution the right to a speedy trial. U.S. Const. amend. VI. To determine whether a criminal defendant has been denied a speedy trial, we apply the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 529–533, 92 S. Ct. 2182, 2191–93 (1972). *See Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Under that test, we weigh, and then balance, four factors: (1) the length of delay, (2) the State's justification for the delay, (3) the defendant's assertion of the right, and (4) the prejudice that the defendant suffered because of the delay. *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93;

---

App. 2012). Hunt has not pointed to any evidence in the record that would rebut this presumption.

*Gonzales*, 435 S.W.3d at 808; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

The State bears the burden to justify the length of the delay. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). But the defendant has the burden to show that he asserted his desire for a speedy trial and that he suffered prejudice as a result of the delay. *Id.* "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). Therefore, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

We review speedy trial claims under a bifurcated standard of review. *Id.* at 282; *Murphy v. State*, 280 S.W.3d 445, 452 (Tex. App.—Fort Worth 2009, pet. ref'd). We review the trial court's factual determinations for an abuse of discretion. *See Cantu*, 253 S.W.3d at 282; *Murphy*, 280 S.W.3d at 452. We view all of the evidence in the light most favorable to the trial court's ultimate ruling. *Cantu*, 253 S.W.3d at 282. We defer not only to the trial court's resolution of disputed facts, but also to its right to draw reasonable inferences from those facts. *Id.* In assessing the evidence at a speedy-trial hearing, the trial court may completely disregard a witness's testimony based on credibility and demeanor evaluations even if that testimony is uncontroverted. *Id.* And

18

the trial court may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.*

In contrast to our review of the trial court's factual determinations, we review its legal conclusions de novo. *See id.*; *Murphy*, 280 S.W.3d at 452. The application of the *Barker* test to the facts is a purely legal question and is thus subject to de novo review. *See Cantu*, 253 S.W.3d at 282.

### 2. Application

The first *Barker* factor—the length of the delay—essentially functions as a threshold test that determines if further review is warranted. *Santallan v. State*, 922 S.W.2d 306, 307 (Tex. App.—Fort Worth 1996, pet. ref'd) (citing *Barker*, 407 U.S. at 530–31, 92 S. Ct. at 2192). Here, more than two years passed between the time that Hunt was indicted and the start of trial; this is a sufficiently long delay to pass the threshold test and "trigger the *Barker* enquiry." *See Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (noting that courts have generally deemed a "delay approaching one year" sufficient to pass the first factor's threshold test); *see also Santallan*, 922 S.W.2d at 307 ("The calculation of delay begins . . . when a formal indictment, information, or actual arrest occurs." (citing *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971))). But, applying the remaining factors, we conclude that Hunt was not denied his right to a speedy trial.

Under the second *Barker* factor, the State bears the burden of showing that the delay was justified. *Shaw v. State*, 117 S.W.3d 883, 889 n.3 (Tex. Crim. App. 2003). Our

evaluation of this factor involves a sort of sliding scale whereby we assign different weights to different reasons for the delay. *See Balderas*, 517 S.W.3d at 768. For example, if the delay resulted from the State's deliberate attempt to hamper the defense, then this factor will be weighed heavily against the State. *Id.* If the delay resulted for more neutral reasons, such as the State's negligence or overcrowded courts, then this factor will still weigh against the State, though less heavily so. *Id.* If the delay resulted from a valid reason, such as a missing witness, then this factor will not weigh against the State at all. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). We also consider whether the State or the defendant was more to blame for the delay. *Balderas*, 517 S.W.3d at 768. Delay caused by either the defendant or his counsel weighs against the defendant. *Id.* at 768 (citing *Vermont v. Brillon*, 556 U.S. 81, 90–91, 129 S. Ct. 1283, 1290–91 (2009)). But in the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay. *Id.*

Here, as the State explained, much of the delay resulted from Hunt's request for a competency evaluation. Hunt's counsel made this request on July 26, 2022, and the trial court signed an order granting it that same day. The competency-evaluation request was ultimately withdrawn on March 3, 2023.[9] Trial was then set for March 20,

---

[9]Hunt's counsel withdrew the request after he visited Hunt in the Tarrant County jail on February 22, 2023, and determined that he was competent. Because Hunt had previously been in custody in another county, his competency was never evaluated.

2023, but it was continued at Hunt's counsel's request.[10] Hunt's counsel again requested—and was granted—a competency evaluation on March 22, 2023. Eventually, trial was reset for the week of July 31, 2023, but because one of the State's witnesses was unavailable that week for medical reasons, the court moved the trial date to August 21, 2023. Hunt's counsel then filed another motion for continuance because he had tested positive for COVID, and the trial date was therefore pushed back to September 11, 2023.

Thus, the record shows that the delay was caused by three primary factors: concerns regarding Hunt's competency, Hunt's trial counsel's motions for continuance, and a witness's unavailability. None of these factors weigh against the State. *See State v. Lopez*, 631 S.W.3d 107, 112–13 (Tex. Crim. App. 2021) ("Our caselaw is clear that delays related to competency evaluations do not count against the State." (citing *Hull v. State*, 699 S.W.2d 220, 221–22 (Tex. Crim. App. 1985))); *Balderas*, 517 S.W.3d at 768 (noting that delay caused by either the defendant or his counsel counts against the defendant, not the State); *Thames v. State*, No. 02-17-00295-CR, 2019 WL 237556, at *7 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op., not designated for publication) ("If the delay resulted from a valid reason, such as a

---

[10]The record reflects that Hunt did not support his trial counsel's request to continue the March 20, 2023 trial setting. Nevertheless, "[b]ecause 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant." *Brillon*, 556 U.S. at 90–91, 129 S. Ct. at 1290–91 (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566–67 (1991)).

missing witness, then this factor will not weigh against the State at all." (citing *Munoz*, 991 S.W.2d at 822)). Accordingly, the State has satisfied its burden to show that the delay was justified.

With respect to the third *Barker* factor, the record reflects that Hunt asserted his right to a speedy trial by filing two motions: a motion for speedy trial in August 2021 and a motion to dismiss in July 2023. But there is nothing in the record to suggest that Hunt took any steps to obtain a hearing on the first motion, and although the second motion was heard by the trial court, it did not request a speedy trial but instead sought to have the case dismissed. *See Reynolds v. State*, No. 12-22-00007-CR, 2023 WL 2802260, at *3 (Tex. App.—Tyler Apr. 5, 2023, no pet.) (mem. op., not designated for publication) (holding that defendant's failure to seek a hearing on his speedy-trial motion caused the third *Barker* factor to weigh against him (citing *Zamorano v. State*, 84 S.W.3d 643, 652 n.44 (Tex. Crim. App. 2002))); *see also Thames*, 2019 WL 237556, at *8 ("[F]iling for a dismissal instead of a speedy trial generally weakens a speedy trial claim because it shows a desire to have no trial rather than a speedy one." (citing *Murphy*, 280 S.W.3d at 454)). Thus, this factor weighs only slightly in Hunt's favor.

The final *Barker* factor—prejudice—is assessed in light of what the speedy-trial right is designed to prevent: oppressive pretrial incarceration, a defendant's anxiety and concern, or impairment of a defense. *Dragoo*, 96 S.W.3d at 315. Impairment of a defense is the most serious, as an inability to adequately prepare for trial skews the

fairness of the justice system. *Id.* (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). Actual prejudice is not required, but the defendant must show some prejudice caused by the delay. *McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973). If the defendant makes a prima facie showing of prejudice, then the burden shifts to the State to prove that the defendant "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826 (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

In his appellate brief, Hunt wholly fails to make any argument as to how he was prejudiced by the delay. He makes no argument whatsoever that the delay impaired his defense or caused him anxiety or concern, and we have found no evidence of such prejudice in the record. The record reflects that Hunt was incarcerated before trial, and although this pretrial incarceration "may have been oppressive if he had not received credit on his sentence for time served or if he had ultimately been found innocent of the charges," the record reflects that he did, in fact, receive credit for his pretrial incarceration. *See Christmas v. State*, Nos. 02-08-00004-CR, 02-08-00005-CR, 2009 WL 579278, at *8 (Tex. App.—Fort Worth Mar. 5, 2009, pet. ref'd) (mem. op., not designated for publication); *see also Salazar v. State*, No. 02-10-00105-CR, 2011 WL 1223737, at *7 n.15 (Tex. App.—Fort Worth Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (holding defendant's confinement was not oppressive because he had received credit for three days of confinement after ultimately being convicted). Accordingly, we conclude that Hunt has not carried his

burden to show that he was prejudiced by the delay of his trial. This factor weighs heavily against him. *See Allen v. State*, No. 02-22-00200-CR, 2023 WL 5766077, at *5 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op., not designated for publication).

Balancing all of the *Barker* factors, we conclude that Hunt's right to a speedy trial was not infringed. Accordingly, we overrule his fourth point.

### III. CONCLUSION

Having overruled all of Hunt's points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 24, 2024